IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| Matthew G. Friederichs, M.D., | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Sanford Health, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Matthew G. Friederichs, M.D. ("Plaintiff"), as and for his Complaint against Defendant Sanford Health ("Defendant"), states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is an individual residing in Cass County, North Dakota.

2. Defendant is a South Dakota corporation with its principal office located at 1305 West 18th Street, Sioux Falls, South Dakota 57015.

3. This Court has federal question jurisdiction over the claims brought by Plaintiff under the Lanham Act, 15 U.S.C. § 1125, and has supplemental jurisdiction over the remainder of Plaintiff's claims pursuant to 28 U.S.C. § 1367, in that the remaining claims are so related to Plaintiff's Lanham Act claim that they form part of the same case or controversy.

4. This Court also has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that the parties are citizens of different states and the amount in controversy exceeds $75,000.

5. Venue is proper in this Court because the causes of action arose primarily in North Dakota.

1

**FACTUAL BACKGROUND**

6. Plaintiff is an orthopedic surgeon. Plaintiff is a graduate of the University of North Dakota School of Medicine. Plaintiff completed a residency in orthopedic surgery at the University of Utah School of Medicine and a fellowship in sports medicine at the University of Utah School of Medicine. Plaintiff is certified by the American Board of Orthopedic Surgery.

7. Defendant is a health system that owns and operates numerous affiliated hospitals and clinics in the Upper Midwest, primarily in North Dakota, South Dakota, and Minnesota.

8. In 2003, Plaintiff began employment as an orthopedic surgeon at MeritCare Medical Group ("MeritCare") in Fargo, North Dakota.

9. Plaintiff and MeritCare were parties to an Employment Agreement (the "Agreement").

10. As is relevant here, the Agreement provided that either party could terminate the Agreement, without cause, on 90 days' written notice.

11. The Agreement further provided that unless otherwise agreed to by MeritCare, Plaintiff was to continue to provide full-time services until the effective date of termination.

12. In 2009, MeritCare merged with Defendant, resulting in Defendant becoming Plaintiff's employer and Defendant becoming the assignee of or a party-in-interest to the Agreement. Plaintiff then worked as an orthopedic surgeon for Defendant in Fargo for over a decade.

13. On November 29, 2021, Plaintiff provided 90 days' written notice to Defendant that he was terminating the Agreement effective February 28, 2022.

14. On November 30, 2021, Defendant informed Plaintiff that his last day would be February 25, 2022.

15. At this time, Defendant also informed Plaintiff that he would not be allowed to see any new patients six weeks before his last day. However, mere days later, Defendant unilaterally

decided that Plaintiff would not be allowed to see any new patients effective immediately, meaning Defendant prevented Plaintiff from seeing new patients for approximately 83 of the 90 days in the notice period. These new patients were reassigned to other surgeons employed by Defendant.

16.   Defendant also unilaterally decided that Plaintiff would not be allowed to perform surgeries on existing patients after February 10, 2022, despite his last date of employment not being until February 25, 2022.

17.   These unilateral decisions by Defendant caused Plaintiff to lose compensation and further caused damage to his reputation with patients.

18.   On December 13, 2021, Plaintiff sent a letter to Defendant regarding these issues, but received no response.

19.   On or about January 5, 2022, Defendant sent letters to an unknown number of Plaintiff's patients. This letter (the "January 5 Letter") provided as follows:

> Dear Susan,
>
> It has been my honor and pleasure to serve patients at Sanford Orthopedics & Sports Medicine Clinic in Fargo, N.D. It's with mixed emotions that I am announcing I will be leaving my position effective February 25, 2022.
>
> If you have an appointment after that day, our clinic will contact you to reschedule with another highly skilled surgeon on the Sanford Orthopedic Team. All of Sanford's Orthopedic Surgeons who are highly trained and skilled. I trust them and our team of advanced practice providers to continue providing you with expert care for your orthopedic needs. They will have access to all of your medical records and history, ensuring a seamless transition.
>
> More information about these providers can be found at sanfordhealth.org.
>
> If you need medication refills or changes, have lab or X-ray follow-up orders, or have any other questions, please call (701) 417-6000 to discuss your options for continuing treatment. Sanford Health will give you at least a 30-day notice if we are unable to meet your ongoing medical needs.
>
> I greatly value our relationship and thank you for entrusting me to care for you over the years. It's been truly rewarding and humbling to have you as my patient. Best wishes for your future health.
>
> **CLINIC LOCATION CHANGE:** All of Sanford Orthopedics and Sports Medicine Clinic, Hospital, Surgery Center and Walk-In Clinic services are now all under one roof at 1720 University Drive South. The new main entrance and parking lot are on the East side of the building on 11th Street S. in Fargo.
>
> Sincerely,
>
> Matthew Friederichs, MD

20. Plaintiff did not author the January 5 Letter or its contents. Nor did Plaintiff otherwise authorize any such communication to be sent on his behalf.

21. This January 5 Letter is a misrepresentation in its entirety, in that it purports to have been sent by Plaintiff and/or authorized by Plaintiff, neither of which is true.

22. The January 5 Letter contains further misrepresentations and false endorsements, including:

    a. That Plaintiff had "mixed emotions" about leaving Defendant;

    b. That Plaintiff believed "[a]ll of Sanford's Orthopedic Surgeons" are "highly trained and skilled";

    c. That Plaintiff "trust[s] them and our team of advanced practice providers to continue providing you with expert care for your orthopedic needs";

    d. That Plaintiff believed it would be a "seamless transition" to a new surgeon;

    e. The implication that Plaintiff no longer wished to have a relationship with his existing patients at his new clinic, such as the statements that "[i]t's been truly rewarding and humbling to have you as my patient" and "[b]est wishes for your future health;" and

    f. The implication that Plaintiff believed it was in the best interests of his patients to continue their care with Defendant, and that Plaintiff desired for them to do so.

23. Plaintiff has learned that Defendant sent this letter to multiple patients and, upon information and belief, likely sent this letter to hundreds of patients, if not thousands.

24. From the contents of the January 5 Letter, it is apparent that Defendant sent it in order to transfer Plaintiff's patients to other surgeons employed by Defendant, so that the patients would not reschedule their surgeries with Plaintiff at his new clinic.

25. On January 12, 2022, Plaintiff sent a letter to Defendant demanding that Defendant cease all such communications with Plaintiff's patients and that Defendant disclose the names of all patients who received such communications so that Plaintiff could provide a corrective communication to said patients. Plaintiff requested a response by noon on January 18, 2022.

26. On January 17, 2022, Plaintiff returned to work following a vacation. On his first day back at Defendant following the January 5 Letter, approximately 10 of Plaintiff's patients either cancelled their appointments or failed to show, an unusually high number that could be attributed only to the January 5 Letter.

27. As of the date of this filing, Defendant has not provided a response to Plaintiff's cease and desist letter. As a result, Plaintiff commenced the instant litigation.

## COUNT I: VIOLATION OF LANHAM ACT (15 U.S.C. § 1125)

28. Plaintiff incorporates the allegations in the Paragraphs above as though fully set forth herein.

29. In its entirety, the January 5 Letter by Defendant is a false statement about Defendant's products and services, as it purports to be an endorsement written and sent by Plaintiff, but Plaintiff neither wrote nor sent the January 5 Letter, nor did he authorize it to be written or sent.

30. Beyond this, the January 5 Letter by Defendant contains further misrepresentations as a purported endorsement of Defendant's products and services, as set forth in Paragraph 22 above.

31. The January 5 Letter actually deceived recipients and further has the tendency to deceive a substantial segment of its audience, given that it was purported to be authored and sent by Plaintiff, and there was no indication that it was actually authored and sent by Defendant without Plaintiff's knowledge or authorization.

32. The January 5 Letter is a material deception, in that it has accomplished and is likely to further accomplish what it overtly seeks to accomplish: to influence Plaintiff's patients to pick a new surgeon at Defendant, rather than move to Plaintiff's new clinic.

33. The January 5 Letter and its misrepresentations affected interstate commerce, given Defendant's use of the United States Postal Service, Defendant's status as a South Dakota organization, the interstate nature of medical insurance benefits, and the status of numerous of Plaintiff's patients as citizens of states other than North Dakota.

34. Plaintiff has been injured and is likely to be further injured as a result of the January 5 Letter, as it is likely to both divert Plaintiff's patients from his new clinic to Defendant, and is also

likely to negatively impact Plaintiff's goodwill with his patients. It is also likely to cause further injury in that a substantial amount of Plaintiff's business is driven by patient referrals.

35. Defendant's misrepresentations have caused Plaintiff to suffer harm. As a result, Plaintiff is entitled to damages exceeding $75,000, a disgorgement of profits, and costs and attorneys' fees as allowed by the Lanham Act, 11 U.S.C. § 1117(a).

36. Unless Defendant is enjoined from making further misrepresentations and ordered to disclose the names of patients who received the January 5 letter so that Plaintiff can make corrective representations, Plaintiff will suffer immediate and irreparable harm and will suffer further monetary damages in an amount exceeding $75,000.

## COUNT II:  VIOLATION OF UNLAWFUL SALES OR ADVERTISING PRACTICES ACT (N.D.C.C. § 51-15-02)

37. Plaintiff incorporates the allegations in the Paragraphs above as though fully set forth herein.

38. In its entirety, the January 5 Letter by Defendant is a false statement, deceptive act, and misrepresentation regarding Defendant's products and services, as it purports to be an endorsement written and sent by Plaintiff, but Plaintiff neither wrote nor sent the January 5 Letter, nor did he authorize it to be written or sent.

39. Beyond this, the January 5 Letter by Defendant contains further false statements, deceptive acts, and misrepresentations which amount to a fraudulent endorsement of Defendant's products and services, as set forth in Paragraph 22 above. Defendant intended that Plaintiff's patients rely on the January 5 Letter so that Defendant could provide surgical services to these patients, as opposed to Plaintiff at his new clinic.

40. The January 5 Letter actually deceived recipients and further has the tendency to deceive a substantial segment of its audience, given that it was purported to be authored and sent by

Plaintiff, and there was no indication that it was actually authored and sent by Defendant without Plaintiff's knowledge or authorization.

41. The January 5 Letter is a material deception, in that it has accomplished and is likely to further accomplish what it overtly seeks to accomplish: to influence Plaintiff's patients to pick a new surgeon at Defendant, rather than move to Plaintiff's new clinic.

42. Plaintiff has been injured and is likely to be further injured as a result of the January 5 Letter, as it is likely to both divert Plaintiff's patients from his new clinic to Defendant, and is also likely to negatively impact Plaintiff's goodwill with his patients. It is also likely to cause further injury in that a substantial amount of Plaintiff's business is driven by patient referrals.

43. Defendant's misrepresentations have caused Plaintiff to suffer harm. As a result, Plaintiff is entitled to damages exceeding $75,000, treble damages, and costs and attorneys' fees as allowed by the Unlawful Sales or Advertising Practices Act, N.D.C.C. § 51-15-09.

44. Further, unless Defendant is enjoined from making further misrepresentations and ordered to disclose the names of patients who received the January 5 Letter so that Plaintiff can make corrective representations, Plaintiff will suffer immediate and irreparable harm and will suffer further monetary damages in an amount exceeding $75,000.

### COUNT III: TORTIOUS INTERFERENCE

45. Plaintiff incorporates the allegations in the Paragraphs above as though fully set forth herein.

46. Plaintiff has relationships with the patients he has served as their physician while employed by Defendant.

47. Plaintiff has expected or prospective relationships with these patients to serve as their physician at his new clinic. These relationships drive further business, in that a substantial amount of Plaintiff's business is driven by referrals from existing patients.

48. Defendant knew about these actual and expected or prospective relationships.

49. As set forth above, Defendant has committed tortious and otherwise unlawful acts by sending the January 5 Letter to an unknown number of patients.

50. These tortious and otherwise unlawful acts were intended to interfere with the relationships, actual and prospective, between Plaintiff and his patients, in an attempt to convince these patients to transfer to a new surgeon at Defendant, as opposed to move to Plaintiff's new clinic.

51. Defendant's acts have caused harm to Plaintiff's relationships with his patients and will cause further harm if not remedied. Defendant's acts have further caused harm to future referrals of business to Plaintiff.

52. As a result, Plaintiff is entitled to damages exceeding $75,000.

53. Further, unless Defendant is enjoined from making further misrepresentations and ordered to disclose the names of patients who received the January 5 Letter so that Plaintiff can make corrective representations, Plaintiff will suffer immediate and irreparable harm and will suffer further monetary damages in an amount exceeding $75,000.

**COUNT IV: INVASION OF PRIVACY (RIGHT OF PUBLICITY/APPROPRIATION)**

54. Plaintiff incorporates the allegations in the Paragraphs above as though fully set forth herein.

3616849.v3

55. Defendant used Plaintiff's name in the January 5 Letter to make it appear as if the letter was an endorsement of Defendant authored and sent by Plaintiff, thereby unlawfully invading and appropriating Plaintiff's privacy and right of publicity.

56. Plaintiff did not authorize or consent to the use of his name or goodwill in the January 5 Letter, nor its fraudulent endorsement.

57. Defendant used the January 5 Letter for its benefit in order to transfer Plaintiff's patients to other surgeons at Defendant, as opposed to Plaintiff's new clinic.

58. Defendant's acts have caused harm to Plaintiff's relationships with his patients and will cause further harm if not remedied.

59. As a direct and proximate result of the January 5 Letter, Plaintiff has suffered and will continue to suffer damages in an amount exceeding $75,000.

60. Further, unless Defendant is enjoined from making further misappropriations and ordered to disclose the names of patients who received the January 5 Letter so that Plaintiff can make corrective representations, Plaintiff will suffer immediate and irreparable harm and will suffer further monetary damages in an amount exceeding $75,000.

## COUNT V:  DEFAMATION

61. Plaintiff incorporates the allegations in the Paragraphs above as though fully set forth herein.

62. The January 5 Letter was a false and defamatory statement in that it purported to be authored and/or authorized by Plaintiff, neither of which was true.

63. The January 5 Letter was published to an unknown number of patients.

64. Defendant sent this letter in order to divert patients away from Plaintiff and his new clinic and instead to other surgeons employed by Defendant.

3616849.v3

65. The January 5 Letter concerned Plaintiff's profession as a surgeon and implies that Plaintiff no longer wanted to serve the patients as a surgeon, and that he instead thought it in the best interests of the patients to see other surgeons employed by Defendant. As a result, the January 5 Letter has a tendency to injure Plaintiff in his occupation as an orthopedic surgeon.

66. As a result, the January 5 Letter constitutes defamation and defamation per se.

67. As a direct and proximate result of the January 5 Letter, Plaintiff has suffered and will continue to suffer damages in an amount exceeding $75,000.

## COUNT VI:  BREACH OF CONTRACT

68. Plaintiff incorporates the allegations in the Paragraphs above as though fully set forth herein.

69. Plaintiff and Defendant are parties to the Agreement.

70. The Agreement required Plaintiff to give 90 days' notice of termination of the Agreement.

71. Plaintiff gave 90 days' notice on November 29, 2021, making the termination effective on February 28, 2022.

72. Defendant informed Plaintiff that his last day of employment would be February 25, 2022, but further unilaterally decided that Plaintiff would not be allowed to see any new patients. Defendant further unilaterally decided that Plaintiff would not be allowed to perform surgeries even for existing patients after February 10, 2022.

73. Plaintiff's compensation at Defendant is driven by the services and surgeries he provides.

74. In requiring Plaintiff to remain employed until February 25, 2022, but not allowing Plaintiff to see any new patients, and not allowing Plaintiff perform surgeries for existing patients after February 10, 2022, Defendant has breached the Agreement, causing harm to Plaintiff's compensation and reputation in excess of $75,000.

75. Therefore, Plaintiff is entitled to damages in excess of $75,000 and injunctive relief.

## COUNT VII: EXEMPLARY DAMAGES

76. Plaintiff incorporates the allegations in the Paragraphs above as though fully set forth herein.

77. As set forth above, Defendant committed fraudulent and deceptive acts designed to harm Plaintiff, impede on his professional judgment as to advising his patients as to their choice of medical providers, and impede upon patients' free and informed choice of medical providers.

78. Defendant acted with fraudulent and malicious intent in committing these fraudulent and deceptive acts.

79. Accordingly, Plaintiff is entitled to exemplary damages against Defendant in an amount to be determined at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1. Injunctive relief;
2. Damages in an amount in excess of $75,000, an exact amount to be proven at trial;
3. Treble damages as provided for by N.D.C.C. § 51-15-02;
4. Disgorgement of profits;
5. Prejudgment interest;
6. Costs, disbursements, and reasonable attorney's fees;
7. Exemplary damages; and
8. For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims so triable.

3616849.v3

| | |
|---|---|
| Dated: January 18, 2022. | **FELHABER LARSON** |
| | By: */s/Brandon J. Wheeler*<br>David L. Hashmall, MN #138162<br>Daniel R. Kelly, MN #247674<br>(D.N.D. admission pending)<br>Brandon J. Wheeler, MN #396336<br>220 South Sixth Street, Suite 2200<br>Minneapolis, MN 55402-4504<br>Telephone: (612) 339-6321<br>Facsimile: (612) 338-0535<br>dhashmall@felhaber.com<br>dkelly@felhaber.com<br>bwheeler@felhaber.com |
| | **ATTORNEYS FOR PLAINTIFF** |

3616849.v3