UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

Matthew Friederichs, M.D.,                     Case No. 3:22-cv-0008-PDW-ARS

                Plaintiff,

vs.

Sanford Health,

                Defendant.

## Sanford Health's Trial Memorandum

### Evidence at Trial

The parties have extensively briefed the background of this matter and Sanford will not repeat that in detail here. Sanford intends to prove that it did not violate the Lanham Act and did not cause damage to Dr. Friederichs. Sanford acknowledges that Dr. Friederichs should have seen and approved the January 5, 2022 letter. However, the letter dated Feb. 4, 2022 provided correction and the contact information for Dr. Friederichs's new practice. Sanford has also provided this contact information for patients who ask about Dr. Friederichs. The jury will learn that patients have not been confused about where Dr. Friederichs can be found if they wish to schedule an appointment with him.

Sanford will establish that it did not intend to confuse patients and that Dr. Friederichs cannot show that an appreciable number of them were in fact confused. Similarly, Sanford will establish that Dr. Friederichs cannot prove causation or damage. Finally, the evidence will establish that Sanford paid Dr. Friederichs everything he was owed under his Employment Agreement.

**Authority for Unresolved Legal Issues**

Following the Court's ruling on the summary judgment motions, Dr. Friederichs has three claims remaining in this lawsuit: (1) Lanham Act false endorsement; (2) North Dakota's unlawful sales and advertising statute; and (3) breach of contract. There are unresolved issues with respect to each claim. Sanford's authority for each unresolved legal issue follows.

I.  **Lanham Act False Endorsement.**

To prove his Lanham Act claim, Dr. Friederichs has the burden to show by a preponderance of the evidence that (1) Sanford made a false or misleading misrepresentation of fact; (2) that the misrepresentation was made in commerce; (3) that the misrepresentation was made in connection with the goods and services Sanford provides; and (4) that the misrepresentation was likely to cause consumers of Sanford's products to be confused as to the origin, sponsorship, or approval of Sanford's goods or services. *See* 15 U.S.C. § 1125(a)(1). Dr. Friedrichs must prove all four of these elements.

Even if Dr. Friederichs is successful in proving the basic elements of his claim, he is not automatically entitled to anything other than potentially an injunction. Injunctive relief is not appropriate because the parties stipulated to a joint corrective letter and a going forward plan for communicating with patients about Dr. Friederichs's new clinic. To obtain other remedies under the Lanham Act, Dr. Friederichs would have to show that this is an "exceptional" case. It is not.

A.  **Likelihood of Confusion**

Eighth Circuit courts have often evaluated likelihood of confusion using six non-exclusive factors:

(1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its cost, and conditions of purchase.

*Johnson v. J.P. Parking, Inc.*, No. 422CV00146, 2024 WL 676770, at *12 (S.D. Iowa Feb. 20, 2024). However, as the Court noted in its summary judgment order, "these factors were not developed for false endorsement claims, and some are unhelpful." (Dkt. 123 at p. 8). Recognizing this problem, in evaluating likelihood of confusion for false endorsement claims, other circuits have used eight non-exclusive factors that better fit a false endorsement claim:

1. the level of recognition that the plaintiff has among the segment of the society for whom the defendant's product is intended;
2. the relatedness of the fame or success of the plaintiff to the defendant's product;
3. the similarity of the likeness used by the defendant to the actual plaintiff;
4. evidence of actual confusion and the length of time that the defendant used the plaintiff's image before any evidence of actual confusion arose;
5. marketing channels used;
6. likely degree of purchaser care;
7. defendant's intent in selecting the plaintiff; and
8. likelihood of expansion of the plaintiff's product lines.

*Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1019-20 (3d Cir. 2008); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007–08 (9th Cir. 2001); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1069 (9th Cir. 2015); Comments to Model Civil Jury Instructions for the Ninth Circuit § 15.5. Sanford proposes that the Court evaluate likelihood of confusion using the eight factors.

3

Regardless of which set of factors is used, "the ultimate question is whether the use in its totality would likely confuse consumers." *Jackson v. Odenat*, 9 F. Supp. 3d 342, 356 (S.D.N.Y. 2014). "Actual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *Safeway Transit LLC, v. Discount Party Bus, Inc.*, 954 F.3d 1171, 1179 (8th Cir. 2020) (quoting *John Allan Co. v. Craig Allen Co.*, 540 F.3d 1133, 1140 (10th Cir. 2008) (internal quotation omitted)). Actual confusion is the false belief that "a product was authorized or approved by a particular person." *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 627-28 (S.D.N.Y. 1985). But even evidence that some consumers "misunderstood" a statement is insufficient to support Dr. Friederichs's false endorsement claim where the statement is not objectively "misleading [or] false." *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 393–94 (8th Cir. 2004) (survey results showing that half of consumers misinterpreted a statement failed to give rise to a genuine issue of material fact where the plain meaning of the statement was not objectively misleading).

As the Court noted, "Dr. Friederichs has brought forth little evidence of confusion" and none of the letter recipients, including the few witnesses Dr. Friederichs may offer, have "interpreted the January Letter as an endorsement of Sanford." (Dkt. 123 at p. 9). Dr. Friederichs must put forth such evidence at trial if the jury is to evaluate his false endorsement claim. He must also prove that an "appreciable" number of the more than 2,300 recipients of Sanford's communications were misled or confused. *See e.g.*, *Duluth News-Trib. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) ("[E]ven several isolated incidents of actual confusion . . . are insufficient to establish a genuine issue of material fact as to the likelihood of confusion.") Sanford expects that the evidence will fall far short of this requirement, making directed verdict appropriate.

4

## B. Disgorgement of Profits

As the Court noted in its order on the parties' motions for summary judgment, monetary relief under the Lanham Act, including disgorgement of profits and attorneys' fees, is only appropriate in "exceptional" cases. This is not an exceptional case. At best, Dr. Friederichs can prove that a mistake was made, and Sanford immediately tried to meet with him to discuss how to correct the problem. He refused to meet and instead filed this lawsuit. Several weeks later, the Feb. 4 letter was sent while Dr. Friederichs was still employed by Sanford. Thus, even if Dr. Friederichs can prove the basic elements of his claims, attorneys' fees and disgorgement of Sanford's profits are not remedies that are available to him.

"[T]he Lanham Act contemplates that a disgorgement or accounting of profits may be appropriate to remedy unfair infringement." *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 471 (8th Cir. 2011) (citing 15 U.S.C. § 1117(a)). However, disgorgement "is not automatic upon a finding of" false advertising. *Fifty-Six Hope Road Music, Ltd.* v. A.V.E.L.A., Inc., 778 F.3d 1059, 1073 (9th Cir. 2015) (citation omitted). "[T]he Lanham Act does not permit the award of monetary relief as a penalty." *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir. 1994) (citing 15 U.S.C. § 1117(a)). "[B]ecause the Act is grounded in equity and bars punitive remedies, an accounting will be denied in a trademark infringement action where an injunction will satisfy the equities of the case." *Id.* (internal quotation omitted). Thus, "an injunction is the preferred Lanham Act remedy." *Id.*; see also *Martinizing Int'l LLC v. BC Cleaners, LLC*, 855 F.3d 847, 852 (8th Cir. 2017) (holding that following an injunction, only an "exceptional case" allows an award of actual damages, disgorgement, or attorneys' fees); *Kars 4 Kids, Inc. v. America Can!*, 8 F.4th 209, 223 (3rd Cir. 2021).

5

Additionally, disgorgement of profits is only appropriate if it is equitable, and the defendant profited from a Lanham Act violation. *See, e.g.*, *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 875–76 (5th Cir. 2019). A plaintiff must "present evidence that the defendant benefitted from the alleged false advertising." *Logan v. Burgers Ozark Cty. Cured Hams Inc.*, 263 F.3d 447, 465 (5th Cir. 2001); *Globefill Inc. v. Elements Spirits, Inc.*, 756 F. App'x 764, 765 (9th Cir. 2019) (disgorgement under the Lanham Act is only allowed for profits that are earned by the defendant and "attributable to" false advertising). Without such evidence, a Lanham Act plaintiff cannot recover a defendant's profits even if disgorgement would otherwise be equitable. *Retractable Techs.*, 919 F.3d at 876; *see also ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969 (D.C. Cir. 1990) ("[T]he court must ensure that the record adequately supports all items of damages . . . lest the award become speculative or violate [the Lanham Act's] prohibition against punishment."); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir. 1986) ("The amount to be awarded is the financial benefit [the defendant] received because of the advertising.").

In *Safeway Transit LLC, v. Discount Party Bus, Inc.*, 954 F.3d 1171, 1179 (8th Cir. 2020), the Eighth Circuit affirmed the district court's rejection of a disgorgement claim even after the district court found infringement under the Lanham Act. The district court rejected the disgorgement claim because the plaintiff had not proven what revenue the defendant received *because of* the infringement. *Id.*, at 1179-1180. The Eighth Circuit affirmed, noting: "The trademark holder has the burden to prove the defendant infringer's gross revenue from the infringement." *Id.*, at 1180 (quoting *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015)). Trial here will establish that Dr. Friederichs cannot prove causation and that this is not the "exceptional case" in which the Lanham Act's preferred

6

remedy of an injunction should be supplemented with equitable disgorgement. *See Minn. Pet Breeders*, 41 F.3d at 1247; *Martinizing*, 855 F.3d at 852.

Sanford has moved in limine to exclude evidence relating to disgorgement because the remedy is equitable and should be decided by the Court. There are several issues to be decided before trial, including: (1) whether disgorgement evidence will be submitted to the jury; (2) if so, what instructions are given to the jury about that issue; and (3) how the Court will decide whether disgorgement is appropriate under the circumstances. The Court has already concluded that even if disgorgement of profits are awarded, the amount would be limited to the period from January 5, 2022 to February 8, 2022.

### C.     Actual Damages

Claims brought under the Lanham Act must be supported by evidence that the wrongful act was the proximate cause of injury. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014) (a Lanham Act plaintiff "must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising"). This limitation is necessary because Congress did not intend "to allow all factually injured plaintiffs" under the statute "to recover," and thus the Lanham Act must "not get such an expansive reading" as to include "any person who believes that he or she is likely to be damaged" despite the language of the statute. *Id.* at 129. Damages under the Lanham Act "may not be awarded on the basis of speculation or conjecture." *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1122 (8th Cir. 1999); *see also McClaran v. Plastic Industries, Inc.*, 97 F.3d 347, 361 (9th Cir. 1996). "[T]o recover money damages under the [Lanham Act], a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages." *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d

7

1035, 1042 (8th Cir. 1999) (quotations omitted). A plaintiff may not recover under the Lanham Act if he or she fails to prove that the defendant's actions caused the claimed harm. *Rhone-Poulenc Rorer Pharm., Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 515 (8th Cir. 1996) (quotations and citations omitted); *see also Wing Enterprises, Inc. v. Tricam Industries, Inc.*, 511 F. Supp. 3d 957, 973-74 (D. Minn. 2021) ("A plaintiff's burden is at its highest when it seeks monetary damages.")

Dr. Friederichs lacks expert opinions that he sustained any past damage under the Lanham Act. His accounting expert, who is the subject of a motion to exclude, provided opinions about future damage based on assumptions he was provided by Dr. Friederichs.[1] Dr. Friederichs cannot prove past damages under the Lanham Act for several reasons. First, he will not prove that an appreciable number of the more than 2,300 recipients of the letters were confused or misled. Second, he cannot prove that he lost past revenue or income because he was employed and paid by Sanford during the claimed period of infringement (from January 5, 2022 to February 8, 2022). He was paid by Sanford during that period whether the "confused" patients received care from him or not.[2]

### D. Attorneys' Fees

Attorneys' fees are only available under the Lanham Act "in exceptional cases." 15 U.S.C. § 1117(a). "'[E]xceptional,' as Congress used the word in . . . the Lanham Act, is most reasonably read to mean what the word is generally understood to indicate—uncommon, not run-of-the-mill." *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C.

---

[1] Those opinions related to patients who Dr. Friederichs contends will not use him for surgical procedures they may need at some unstated time in the future.

[2] Dr. Friederichs was employed by Sanford until February 25, 2022 and his new clinic did not open until March 15, 2022.

8

Cir. 1985). District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S.Ct. 1749 (2014) (interpreting similar language in the patent statutes). A district court may consider a nonexclusive list of factors, including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). Thus, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so exceptional as to justify an award of fees." *Id.* at 555 (quotation omitted). The evidence will confirm that this is not one of the rare cases that justify an award of attorneys' fees.

## II. Unlawful Sales or Advertising Practice.

North Dakota's Unlawful Sales or Advertising Practices Act (the "Act") prohibits the use of deceptive practices "in connection with the sale or advertisement of any merchandise." N.D.C.C. § 51-15-02. To prove an unlawful sales or advertising practice, Dr. Friederichs must prove, by the greater weight of the evidence:

1. Sanford acted, used, or employed a deceptive act or practice, fraud, false pretense, false promise, or misrepresentation; and

2. Sanford intended that others rely on Sanford's act, use, or employment of a deceptive act or practice, fraud, false pretense, false promise, or misrepresentation in connection with the sale or advertisement of its services.

N.D.C.C.§ 51-15-02. "If the court finds the defendant knowingly committed the conduct, the court may order that the person commencing the action recover up to three times the actual damages proven and the court must order that the person commencing the action

9

recover costs, disbursements, and actual reasonable attorney's fees incurred in the action." N.D.C.C.§ 51-15-09.

Dr. Friederichs must prove his statutory claim by a preponderance of the evidence. *State ex rel. Spaeth v. Eddy Furniture Co.*, 386 N.W.2d 901, 903 (N.D. 1986). "The Act provides for a private cause of action for parties who have suffered actual damages if the court finds the defendant knowingly committed the conduct declared unlawful under the Act." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, Civil Case No. 4:13-CV-10, 2015 WL 11156906, at *4 (D. N.D. July 7, 2015). Dr. Friederichs must prove that Sanford knowingly violated the Act and acquired money because of that violation. *Staal v. Scherping Enters., Inc.*, 466 F. Supp. 3d 1030, 1034 (D. N.D. 2020). "Section 51-15-09 is clear that a private cause of action cannot arise unless a person actually 'acquired . . . moneys or property by means of' unlawful conduct." *Woodmont Co. v. LaSalle Shopping Ctr., LLC*, No. 1:17-cv-0073 (PDW), 2020 WL 2857164, at *16 (D. N.D. June 2, 2020) (quoting N.D.C.C. § 51-15-09); *Benz Farm, LLP v. Cavendish Farms, Inc.*, 803 N.W.2d 818, 824 (N.D. 2011).

Dr. Friederichs must also prove causation and actual damages to recover under N.D.C.C. § 51-15-09. As with his other claims, Dr. Friederichs will not have sufficient evidence to support causation or actual damage under this statute. The absence of any evidence that a patient would have seen Dr. Friederichs but for the Jan. 5 letter and his consequential inability to show actual damage is fatal to this claim. Likewise, Dr. Friederichs has not shown that Sanford has acquired any money because of any alleged unlawful advertising.[3]

---

[3] And even if he could show any damage, however minimal, to recover attorneys' fees under a statute a prevailing plaintiff "must achieve more than a technical or de minimis victory." *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573, 575 (8th Cir. 2014) (affirming 82%

### III. Breach of Contract

A party alleging a breach of contract has the burden of proving (1) the existence of a contract, (2) a breach of the contract, and (3) damages which flow from the breach. *Martin v. Trinity Hosp.*, 2008 ND 176, ¶ 29, 755 N.W.2d 900 (N.D. 2008). Under N.D.C.C. § 32–03–09, "[n]o damages can be recovered for a breach of contract if they are not clearly ascertainable in both their nature and origin." The evidence will show that Sanford paid what it owed Dr. Friederichs under his Employment Agreement.

**Evidence to Be Offered**

Sanford intends to offer some or all of the documents and evidence identified in its Exhibit List. This evidence will include (1) Dr. Friederichs's employment documents including his Employment Agreement and pay history; (2) Dr. Friederichs's phone recordings, text messages, and emails; (3) the Feb. 4 corrective letter; (4) Sanford employees' emails and text messages; (5) letters from Dr. Friederichs's counsel; (6) news articles about Dr. Friederichs's lawsuit; (7) various excel spreadsheets including those with financial data and some with patient data; (8) Dr. Friederichs's discovery responses; (9) Sanford's expert's materials and opinions; and (10) other relevant evidence and any documents necessary for impeachment, foundation, or rebuttal.

The evidence Sanford offers will show that: (1) Dr. Friederichs was treated fairly during his tenure at Sanford; (2) the Jan. 5 letter was an honest mistake; (3) Sanford tried to remedy the Jan. 5 letter but Dr. Friederichs refused to meet with Sanford representatives; (4) the Feb. 4 corrective letter remedied the issues, if any, created by the Jan. 5 letter; (5) Dr.

---

reduction of fee request where plaintiff was awarded only nominal damages); *Kirby v. Roth*, 515 F. App'x 642, 643–44 (8th Cir. 2013) (affirming 75% reduction of fee request to account for limited success); *Deadwood Canyon Ranch, LLP v. Fidelity Expl. & Prod. Co.*, Case No. 4:10-cv-081 2014 WL 11531553, *7 (D. N.D. June 6, 2014).

Friederichs was not damaged by the letters and actually received a benefit in the form of free advertising that he otherwise would not have received; (6) Dr. Friederichs has maintained this lawsuit in hope of punishing Sanford and receiving unreasonable attorneys' fees; (7) the letters did not cause a likelihood of confusion; (8) Sanford paid Dr. Friederichs the amount he was owed under his Employment Agreement and had previously overpaid Dr. Friederichs on multiple occasions; and (9) other pertinent facts to Sanford's defenses.

### Anticipated Evidentiary and Procedural Issues

Sanford does not anticipate any evidentiary or procedural issues apart from those already briefed and submitted to the Court.

### Objections to Dr. Friederichs's Exhibits

Sanford objects to the exhibits listed on Dr. Friederichs's Exhibit List as follows.

**A.   Any text messages sent by anyone other than Dr. Friederichs**

Sanford objects to the admission of exhibit nos.:

- P022 (Mangin Text December 8, 2021 (SAN00000303))
- P044 (Solheim Text Messages (FRIEDERICHS001722-23))
- P066 (Mangin Text Message January 21, 2022 (SAN00000302))
- P102 (Excerpts of Erickson Text Messages (SAN00001959))
- P103 (Excerpts of Mangin Text Messages (SAN00001955))
- P104 (Excerpts of Mangin Text Messages (FRIEDERICHS001645-46))
- P105 (Excerpts of Piatt Text Messages (SAN00001954))
- P106 (Excerpts of Piatt Text Messages (FRIEDERICHS001627-30))
- P107 (Excerpts of Volk Text Messages (SAN00001956))
- P108 (Excerpts of Skari Text Messages (FRIEDERICHS 001725))

Sanford objects to the admission of these exhibits on the basis that incoming messages from third-parties lack foundation, are hearsay, and Dr. Friederichs cannot show that any exception to hearsay applies. Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

Any text message that was not sent by a party to this lawsuit is an out of court non-testimonial statement that Dr. Friederichs is offering to prove the truth of the matter asserted. *See United States v. Lackey*, 1:17-CR-269, 2019 WL 6464656, at *4 (M.D. Pa. Dec. 2, 2019) ("The text messages sent from Lackey's phone are his own statements and are therefore not hearsay under Rule 801(d)(2)(A) . . . [but] [t]ext messages sent to the phone are inadmissible out-of-court statements offered for their truth."); *Henderson v. Waxxpot Group, LLC*, 2:20-CV-153, 2022 WL 2980531, at *3 (S.D. Ohio July 28, 2022) (company's internal text messages about terminated employee's poor performance were inadmissible hearsay that met no hearsay exception); *Gonzalez v. City of Chicago*, 11-CV-8356, 2015 WL 5159945, at *1 (N.D. Ill. Sept. 1, 2015) (Decedent's text messages were "hearsay, out of court statements offered for the truth of the matters asserted, and no exception to the hearsay rule applie[d].")

Additionally, foundation is lacking to show who sent these non-party messages even if Dr. Friederichs recognizes the originating cell numbers. The fact that a message was received from a recognized phone number does not establish who sent the message. Accordingly, these exhibits should be excluded from evidence. To the extent Dr. Friederichs offers "excerpts" of text messages as his Exhibit List indicates, Sanford reserves its rights under Fed. R. Evid. 106 to offer some or all of the remainder of the text messages necessary for completeness.

### B.     Chris Van Schooneveld's Materials and Exhibits

Sanford objects to the admission of Exhibit Nos.:

- P118-P125 (Chris Van Schooneveld's Third Supplemental Report and Exhibits and Schedules Thereto)[4]

In its order on the parties' summary judgment motions, the Court found that the period of infringement in this case was between January 5, 2022, and February 8, 2022. (Dkt. 123 at p. 11 "The period of infringement in this case is narrow: the first letter was sent on January 5, 2022, and a second, corrective letter was sent on February 8, 2022.") The Court also found that "[t]he disgorgement of any profits collected after Sanford sent the February Letter would exceed the period of infringement and create perverse incentives against corrective action." (*Id.*) Mr. Van Schooneveld's reports, exhibits, and schedules are not consistent with the Court's order. Rather, he uses the period from January 2022 to June 2023. This evidence cannot be admitted because it is not relevant and would: (1) unfairly prejudice Sanford; (2) confuse the issues, and (3) mislead the jury. *See* Fed. R. Evid. 401-403.

Dr. Friederichs's claim for disgorgement, if any, is limited to the period from January 5, 2022 to February 8, 2022. Dr. Friederichs should not be allowed to submit irrelevant evidence from outside of that period. Additionally, expert reports are generally not themselves admissible because they are hearsay or would be cumulative of testimony provided by the witness. *Allstate Ins. Co. v. Vizcay*, Case No.: 8:11–CV–804–T–17EAJ, 2013 WL 12157568, * (M.D. Fla., Mar. 26, 2013) ("Further, expert reports are intended to be discovery vehicles; their admission at trial may be subject to challenge as cumulative or

---

[4] Until August 21, 2024, only a second supplemental report had been produced for Mr. Van Schooneveld. Dr. Friederichs produced a third supplemental report for Mr. Van Schooneveld on August 21, 2024 and Sanford reserves all rights to object based on the untimely nature of this report.

unnecessary when the expert witness has testified.") These exhibits should be excluded as cumulative of any testimony Mr. Van Schooneveld provides and as hearsay. *Id.*; *Shadrick v. Southern Health Partners, Inc.*, Case No. 4:11CV-00033-JHM, 2016 WL 4555611, * 8 (W.D. Ky., Aug. 31, 2016) (excluding expert reports as inadmissible hearsay).

### C. Non-Discovery Pleadings

Sanford objects to the admission of Exhibit Nos.:

- P065 (Motion for Temporary Restraining Order (ECF No. 3))
- P077 (Stipulation dated February 3, 2022 (ECF No. 23))
- P078 (Order Adopting Stipulation)
- P135 (Complaint)

Generally, statements in a complaint or other pleading are only "admissible *against* the pleader to prove the matter asserted—as is any other statement by a party." *Dang v. Smith*, 190 Cal. App. 4th 646, 657, 118 Cal. Rptr. 3d 490, 499 (2010) (emphasis added); *see also Garman v. Griffin*, 666 F.2d 1156, 1158 (8th Cir. 1981) ("Where a party has made a statement in a pleading about his own conduct which is at variance with his position in the matter being litigated, the evidence is generally admitted."); *Stolte v. Larkin*, 110 F.2d 226, 232 (8th Cir. 1940); *Beyer v. Todd*, 601 N.W.2d 35, 42-43 (Iowa 1999) (holding facts contained in petition are admissible as evidence).

In proposing to offer his Complaint and his Motion for Temporary Restraining Order, Dr. Friederichs apparently intends to offer his *own* pleadings in support of his *own* allegations. He is not offering these documents as admissions of a party opponent and, as a result, Sanford objects to their use at trial. The Rule 801(d)(2) "exception" to hearsay does not apply because the pleadings are not being offered against the declarant. Rather, they are

15

being offered by the declarant to support the declarant's out of court arguments. Further, these documents are not relevant and would prejudice Sanford and confuse the jury. *See* Fed. R. Evid. 401, 402, 403. These pleadings are inadmissible if offered by Dr. Friederichs.

Additionally, the Stipulation dated February 3, 2022 and the Order Adopting Stipulation are not pleading admissions by Sanford. One is a procedural agreement submitted to resolve a motion and the other is an Order of the Court. Neither are admissible out-of-court statements by Sanford offered for the truth of the matters contained therein. The Stipulation is not a "statement" by Sanford nor is the Court's Order. These documents are not admissible and Sanford objects to them under Rule 801. Further, these documents are not relevant to the claims or defenses and would prejudice Sanford and confuse the jury. *See* Fed. R. Evid. 401, 402, 403. The Stipulation and Order are inadmissible if offered by Dr. Friederichs.

**D.    Evidence Regarding Post-Resignation Operating Room Block Time**

Sanford objects to the admission of Exhibit Nos.:

- P71 (Friederichs Email January 27, 2022 (SAN00000399))
- P91 (Dobberstein Email February 18, 2022 (SAN00000390))
- P92 (Piatt Email February 18, 2022 (SAN00000380))
- P93 (Friederichs Email February 18, 2022 (SAN000000195-196))
- P95 (Piatt Email March 8, 2022 (SAN00000924))
- P96 (Piatt Email March 15, 2022 (SAN00001392))
- P97 (Friederichs Email March 14, 2022 (SAN00000367))
- P98 (Dobberstein Email April 14, 2022 (SAN00000169-170))
- P99 (Sanderson Email April 15, 2022 (SAN00000386-387))

16

- P100 (Dobberstein Email April 18, 2022 (SAN00001442-1443))
- P101 (Friederichs Email April 18, 2022 (SAN00000364-366))

Surgeons at hospitals typically have operating room ("OR") block time on particular days of the week. They can schedule procedures during their block time. The days of the week that a surgeon gets for OR block time is often based on their employment seniority. Some surgeons prefer to have their OR block time in the middle of the week (Tuesday through Thursday).

Because he resigned from his employment at Sanford, Dr. Friederichs was required to re-apply for hospital privileges. In doing so, he needed new OR block time so he could schedule surgical procedures at Sanford. Following his resignation, Dr. Friederichs was given OR block time on Fridays. Operating on Fridays may require Dr. Friederichs to see some post-operative patients in the hospital on the weekend. He also needed to provide assurance that he or other physicians would cover "calls" for those patients over the weekend. Dr. Friederichs was apparently unhappy about having his OR block time set on Fridays because he did not want to work on weekends. He sent numerous communications about OR block time following the Jan. 5 and Feb. 4 letters and continued complaining after his employment with Sanford had ended. These communications resulted in internal Sanford communications regarding Dr. Friederichs's OR block time.

Dr. Friederichs has listed numerous documents regarding his post-resignation OR block time on his exhibit list. This evidence is not relevant to anything at issue in this lawsuit. It has nothing to do with Dr. Friederichs's false endorsement or statutory advertising claims. It has nothing to do with whether Sanford paid him what he was owed under his Employment Agreement before his employment ended on February 25, 2022.  Evidence

regarding communications about his OR block time happened after the claimed false endorsement or advertising and does nothing to prove or disprove those claims. *See C.C. through Ginnever v. Suzuki Mfg. of Am. Corp.*, 4:16CV01271 ERW, 2018 WL 4504687, at *3 (E.D. Mo. Sept. 20, 2018) (evidence of defendant's failure to conduct a recall or warn customers of a defect was inadmissible because it was not relevant to a claim that product was defective); *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 322–23 (S.D.N.Y. 2009) (e-mail chain between shareholder in radiology practice and practice's accountant regarding the need for physician to sign a non-compete agreement was not relevant to antitrust action and, therefore, not admissible).

The parties' communications about OR block time is irrelevant to this dispute and not admissible. *See* Fed. R. Evid. 401, 402. Moreover, even if this evidence had any relevance, it should be excluded under Rule 403 because it would confuse the issues, mislead the jury, waste time, and cause undue delay. *See* Fed. R. Evid. 403. If Dr. Friederichs's complaining about his OR block time had any relevance to the dispute, he would undoubtedly have added it to his Complaint. Evidence of the parties' post-February 8, 2022 communications about OR block time should be excluded.

### E.     Exhibits Lacking Foundation and / or Relevance

Sanford objects to the admission of Exhibit Nos.:

- P48 (Lystad Letter June 9, 2020 (SAN00000155))
- P49 (Norberg Letter July 31, 2021 (SAN00001953))
- P50 (Patient Rights (ECF No. 6-3))
- P51 (ABOS Professionalism Statement (Deposition Ex. No. 63))

18

The Lystad and Norberg letters are letters from non-party doctors that lack foundation and are not relevant to Dr. Friederichs's claims. *Farkarlun v. Hanning*, 855 F. Supp. 2d 906, 921 (D. Minn. 2012). Even if the letters were somehow relevant, they would bring up a whole host of foundational and other evidentiary issues including: (1) who received the letters; (2) who approved the letters; and (3) who sent the letters. Dr. Friederichs may attempt to introduce these letters and then surround them with a favorable back story without laying any foundation for them. Sanford therefore objects to them under Rule 401 and 403 because they are not relevant to his claims and would confuse the jury.

The Patient Rights document is a standard Sanford document that simply lists the various rights a patient has, and the ABOS Professionalism Statement is a document that lists guidelines orthopedic surgeons should follow in interacting with patients. Neither document has any relevance to Dr. Friederichs's claims. Interactions with patients and their rights while at the hospital are not relevant to Dr. Friederichs's allegations of false endorsement, unlawful advertising, or breach of contract.

Additionally, because his own claims for damages lack support, Dr. Friederichs wants to use these exhibits to bring nonparties into this dispute and punish Sanford for allegedly harming nonparties. Such evidence would not even be relevant to Dr. Friederichs's exemplary damages claim and is certainly not relevant to his remaining claims in this lawsuit. *See, e.g., Philip Morris USA v. Williams*, 549 U.S. 346, 349-355 (2007) ( Jurors are not permitted to award punitive damages on the basis of their desire to punish a defendant for harming nonparties.) Dr. Friederichs seeks to introduce this irrelevant evidence without foundation to prejudice Sanford, confuse the issues, mislead the jury, and waste time. Accordingly, the Court should exclude exhibits P48-P51. *See* Fed. R. Evid. 401-403, 602, and 901.

| | |
|---|---|
| Date: <u>August 21, 2024</u> | **LARSON • KING, LLP** |
| | <u>*/s/ Shawn M. Raiter*</u><br>Shawn M. Raiter (ND 05712)<br>Angela Beranek Brandt (ND 08130)<br>Zane P. Aubert<br>2800 Wells Fargo Place<br>30 E. Seventh Street<br>St. Paul, MN  55101<br>Tel: (651) 312-6500<br>Fax: (651) 312-6618<br>sraiter@larsonking.com<br>abrandt@larsonking.com<br>zaubert@larsonking.com<br><br>**Attorneys for Sanford Health** |