**UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA**

---

Matthew Friederichs, M.D.,                          Case No. 3:22-cv-0008-PDW-ARS

                    Plaintiff,

vs.

Sanford Health,

                    Defendant.

---

### Sanford Health's Memorandum in Support of Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion to Reduce the Exemplary Damages Awarded

---

David L. Hashmall (MN 138162)
Daniel R. Kelly (MN 247674)
Brandond J. Wheeler (MN 396336)
FELHABER LARSON
220 South Sixth Street, Suite 2200
Minneapolis, MN  55402-4504
Tel: (612) 339-6321
dhashmall@felhaber.com
dkelly@felhaber.com
bwheeler@felhaber.com
*Attorneys for Plaintiff*

Shawn M. Raiter (ND 05712)
Angela Beranek Brandt (ND 08130)
Zane P. Aubert
LARSON • KING, LLP
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN  55101
Tel: (651) 312-6500
sraiter@larsonking.com
abrandt@larsonking.com
zaubert@larsonking.com
*Attorneys for Sanford Health*

## Introduction

When ruling on the parties' motions for summary judgment, the Court found that "Dr. Friederichs ha[d] brought forth little evidence of confusion" and advised the parties that they "should be aware the Eighth Circuit recently suggested that monetary relief under the Lanham Act, including disgorgement of profits, is only appropriate in exceptional cases." (Dkt. 123 at pp. 10, 17) (cleaned up) (citing *Wing Enterprises, Inc. v. Tricam Indus., Inc.*, 511 F. Supp. 3d 957, 978 (D. Minn. 2021)).

The evidence at trial did not better support Dr. Friederichs's claims. In a Lanham Act false endorsement case where he was required to show confusion among an appreciable number of patients, Dr. Friederichs rested without testimony from a single person who was confused by the Jan. 5 letter or who mistakenly thought that Dr. Friederichs had endorsed Sanford. He also failed to show that Sanford's patient communications caused even one patient to choose a different doctor because they were confused. Dr. Friederichs did not present evidence that Sanford caused him damage and his own conclusory testimony is insufficient under binding Eighth Circuit precedent.

Dr. Friederichs also failed to present evidence showing that Sanford employed a misrepresentation of fact and did so with the intent that others rely on it in connection with the advertisement of its services – both critical elements of his claim under North Dakota's unlawful sales or advertising practice statute. He had no evidence that Sanford acquired money *because* of an unlawful advertising practice, which is another dispositive failure of his statutory claim. Even assuming patients chose to use another surgeon at Sanford because of the Jan. 5 letter before they received the Feb. 4 corrective letter, Sanford would have lost money on those patients. That is because, during his resignation period, Dr. Friederichs was paid as if he had seen the patients and Sanford *also* had to pay the surgeon who actually cared for the patients.

Finally, Dr. Friederichs's claim for exemplary damages cannot survive independently from his claim under North Dakota's unlawful sales or advertising practice statute because exemplary

damages are not available under the Lanham Act. Regardless, he failed to show the requisite culpability on Sanford's part to support an award of exemplary damages.

Dr. Friederichs failed to present evidence sufficient to support the jury's verdict on his statutory claims, or for the jury to award damages without speculating. The verdict is not relevant to whether Dr. Friederichs provided sufficient evidence to support the verdict. The Court should rule that Dr. Friederichs's claims fail as a matter of law. Finally, in the alternative to judgment as a matter of law, the Court should reduce Dr. Friederichs's award of exemplary damages to comply with constitutional limits.

## Legal Standard

Judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1). "When ruling on a motion for judgment as a matter of law, the district court must accord the nonmoving party the benefit of all reasonable inferences, but may not give that party the benefit of unreasonable inferences or resort to speculation." *Jaros v. LodgeNet Entm't Corp.*, 171 F. Supp. 2d 992, 999 (D.S.D. 2001), aff'd, 294 F.3d 960 (8th Cir. 2002). The "question is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which the jury could properly find for that party." *Owner-Operator Indep. Drivers Assoc., Inc. v. USIS Commercial Servs., Inc.*, 537 F.3d 1184, 1191 (10th Cir. 2008) (internal quotation omitted). Rule 50 "allows the trial court to remove cases or issues from the jury's consideration when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (internal quotation omitted).

If the Court does not grant a motion under Rule 50(a) the action is considered submitted to the jury. Fed. R. Civ. P. 50(b). Within 28 days following the entry of judgment, the movant may file a renewed motion for judgment as a matter of law. *Id.* "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3)

direct the entry of judgment as a matter of law." *Id.* The jury's verdict is not relevant to whether the plaintiff has provided a legally sufficient evidentiary basis to support their claims. *See Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007) ("[I]n ruling on a party's renewed motion under Rule 50(b) after the jury has rendered a verdict, a court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence.")

## Procedural Background

On June 6, 2024, the Court ruled on motions for summary judgment and dismissed Dr. Friederichs's claims except for his claim for breach of contract and claims under the Lanham Act and North Dakota's Unlawful Sales or Advertising Practices Act (the "USAPA"). (Dkt. 93). On August 9, 2024, the Court granted Sanford's motion to bifurcate and separated the trial into two phases. (Dkt. 140). Phase one of trial considered Dr. Friederichs's claims of liability and actual damage and phase two would consider his request for exemplary damages. (Dkt. 140).

Trial commenced on August 27, 2024. Dr. Friederichs rested on September 3, 2024. After Dr. Friederichs had presented all his evidence, Sanford moved for judgment as a matter of law under Rule 50(a) because Dr. Friederichs had not produced sufficient evidence to support any of his claims. (Dkt. 169). The Court verbally denied the Rule 50(a) motion on September 4, 2024. The following day, Sanford presented evidence from several witnesses and then rested.

On September 6, 2024, the jury returned its verdict in phase 1 of the trial finding for Sanford on the breach of contract claim and for Dr. Friederichs on his claims under the USAPA and the Lanham Act. (Dkt. 181). After asking a question in which the jury indicated it did not want to award double damages, the jury awarded Dr. Friederichs $24,250.00 in damages for each claim ($48,500.00 total). (Dkt. 181). It also found that Sanford had received $1,300.00 in profits. *Id.* The trial then proceeded to phase two where the jury awarded $240,000.00 in exemplary damages. (Dkt. 183). On October 7, 2024, the Clerk of Court entered judgment on the jury's verdict in the amount of $289,800.00. (Dkt. 186).

Argument

**I.    Dr. Friederichs Did Not Produce Sufficient Evidence to Support a Jury Verdict on Lanham Act False Endorsement.**

The Court should issue judgment in favor of Sanford as a matter of law on the claim brought under the Lanham Act. To prove his Lanham Act false endorsement claim, Dr. Friederichs needed to prove by a preponderance of the evidence that (1) Sanford made a false or misleading misrepresentation of fact; (2) that the misrepresentation was made in commerce; (3) that the misrepresentation was made in connection with the goods and services Sanford provides; and (4) that the misrepresentation was likely to cause consumers of Sanford's products to be confused as to the origin, sponsorship, or approval of Sanford's goods or services. *See* 15 U.S.C. § 1125(a)(1).

**A.    No Evidence of Misrepresentation of Fact.**

Dr. Friederichs failed to present evidence that the Jan. 5 letter contained objective misrepresentations of fact. He instead pointed to portions of the letter that required subjective analysis of Dr. Friederichs's views about his departure or his feelings about certain of his former colleagues at Sanford (who he never identified). Dr. Friederichs did not dispute that the Jan. 5 letter contained objectively true information like the fact he was leaving Sanford, that Sanford would assist patients with future care needs, and that Sanford would answer questions and would transfer medical records if needed.

Dr. Friederichs argued that the letter implied that he no longer wanted to see the patients and that he believed every orthopedic surgeon at Sanford was highly trained to perform the type of surgeries he performed. Dr. Friederichs presented testimony from three of the 2,334 patients who were sent the two letters at issue.[1] None of these patients (Mary Vetter, Susan Solheim, and Gary Euren) testified that they believed Dr. Friederichs had retired or that he wanted them to see a different orthopedic physician.

---

[1] These patients total 0.129% of the patients who were sent these letters (3/2,334 = .001289).

The Eighth Circuit's opinion in *Dryer v. National Football League* is instructive on this issue. In *Dryer*, multiple former players sued the NFL claiming that films produced by an NFL-affiliate violated the Lanham Act. *Dryer v. Nat'l Football League*, 814 F.3d 938, 940 (8th Cir. 2016). The films consisted of compilations of game footage and interviews with the plaintiffs. *Id.* at 941. The plaintiffs argued that the films falsely implied that they still endorsed the NFL. *Id.* at 944-945. Unlike Dr. Friederichs, the plaintiffs presented evidence that a significant number of survey participants concluded that the depicted players endorsed the NFL. *Id.* at 944. However, the Court found that the plaintiffs had failed to provide any evidence that the films contained misleading or false statements regarding their current endorsement of the NFL. *Id.* at 945. Accordingly, the Eighth Circuit affirmed the trial court's granting of summary judgment in favor of the NFL. *Id.* ("Some viewers of this content may have 'misunderstood' the extent to which the appellants continue to associate with or endorse the league, but this misunderstanding alone is insufficient to overcome summary judgment.") In doing so, the *Dryer* court noted that:

> Evidence that some consumers "misunderstood" a statement, however, is insufficient to overcome summary judgment where the statement is not objectively "misleading [or] false." *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 393–94 (8th Cir.2004) (holding that survey results showing that half of consumers misinterpreted a statement failed to give rise to a genuine issue of material fact where the plain meaning of the statement was not objectively misleading).

*Id.* at 945.

Here, Dr. Friederichs provided no evidence that the alleged false endorsement contained any objectively false statement. The things he focused on all required knowledge of Dr. Friederichs's subjective views. None of the three patient witnesses testified that they interpreted the Jan. 5 letter to be an endorsement of Sanford or that Dr. Friederichs no longer wanted to care for them. The letter contained boilerplate language that is not objectively false and Dr. Friederichs did not present any evidence to the contrary. The Court should rule as a matter of law against Dr. Friederichs on his Lanham Act claim because there was no misrepresentation of fact.

**B.      Dr. Friederichs Did Not Prove Likelihood of Confusion.**

The Court instructed the jury to evaluate likelihood of confusion using four non-exclusive factors:

(1)   the strength of Dr. Friederichs' name. This refers to the level of recognition or recognizability that Dr. Friederichs has among the consumers to whom the letter dated January 5, 2022, was directed;

(2)   the degree to which Dr. Friederichs' and Sanford's Health's products or services compete with each other;

(3)   whether Sanford Health intended to use Dr. Friederichs' name. This is not about whether Sanford Health acted in bad faith, but whether Sanford Health believed that patients would associate the letter dated January 5, 2022, with Dr. Friederichs; and

(4)   whether Sanford Health's use of the letter dated January 5, 2022, has led to instances of actual confusion among purchasers or potential purchasers about the sponsorship or approval of Sanford Health's product or services.

(Doc. 176, p. 6). When considering likelihood of confusion, "the ultimate question is whether the use in its totality would likely confuse consumers." *Jackson v. Odenat*, 9 F. Supp. 3d 342, 356 (S.D.N.Y. 2014). "Actual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *Safeway Transit LLC, v. Discount Party Bus, Inc.*, 954 F.3d 1171, 1179 (8th Cir. 2020) (quoting *John Allan Co. v. Craig Allen Co.*, 540 F.3d 1133, 1140 (10th Cir. 2008) (internal quotation omitted)). Actual confusion is the false belief that "a product was authorized or approved by a particular person." *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 627-28 (S.D.N.Y. 1985). But even evidence that some consumers "misunderstood" a statement is insufficient to support Dr. Friederichs's false endorsement claim where the statement is not objectively "misleading [or] false." *Am. Italian Pasta Co.*, 371 F.3d at 393–94 (survey results showing that half of consumers misinterpreted a statement failed to give rise to a genuine issue of material fact where the plain meaning of the statement was not objectively misleading).

As the Court noted, "Dr. Friederichs has brought forth little evidence of confusion" and none of the letter recipients, including Dr. Friederichs's three patient witnesses, had "interpreted the January Letter as an endorsement of Sanford." (Dkt. 123 at p. 9-10). During trial, Dr. Friederichs did

not fix this problem. He was required to admit evidence that an appreciable number of patients were confused. *See e.g.*, *Duluth News-Trib. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) ("[E]ven several isolated incidents of actual confusion . . . are insufficient to establish a genuine issue of material fact as to the likelihood of confusion."); *Dryer*, 814 F.3d at 944; *Am. Italian Pasta Co.*, 371 F.3d at 393–94.

Dr. Friederichs presented testimony from only three of the 2,334 patients who were sent the letters in question. None of them said they were misled into changing doctors. But even if they did, evidence from 0.129% of the patients who were sent these letters (3/2,334 = .001289) cannot, as a matter of law, satisfy the Eighth Circuit's requirement that an appreciable number of patients were confused. *Duluth News-Trib.*, 84 F.3d at 1098. In *Duluth News-Trib.*, even isolated instances of *actual confusion* could not support a Lanham Act claim. Dr. Friederichs did not muster any evidence of actual confusion and Sanford should be granted judgment on that claim.

No witness testified at trial that patients had been confused or misled. Dr. Friederichs did not elicit any testimony from a Sanford employee that Sanford heard or had evidence that the Jan. 5 letter misled patients and caused them to seek treatment from someone other than Dr. Friederichs. He did not provide a survey or similar evidence to establish an appreciable number of patients had been confused. No documentary evidence was offered that patients were confused. For example, Dr. Friederichs did not present any emails or communications from patients suggesting they were confused. He similarly did not present any internal Sanford communications that suggested patients were confused or misled. After years of litigation and a lengthy trial, Dr. Friederichs could not muster any evidence of actual confusion—much less evidence that an appreciable number of patients were confused. The Lanham Act claim failed as a matter of law. *See e.g.*, *Duluth News-Trib.*, 84 F.3d at 1098 (8th Cir. 1996) ("[E]ven several isolated incidents of actual confusion . . . are insufficient to establish a genuine issue of material fact as to the likelihood of confusion."); *Dryer*, 814 F.3d at 944; *Am. Italian Pasta Co.*, 371 F.3d at 393–94.

In addition to failing to present evidence of actual confusion—the most important factor in the likelihood of confusion analysis—Dr. Friederichs failed to present evidence supporting any of the other factors and, in fact, presented evidence negating those factors. Dr. Friederichs testified that patients take great care in their selection of surgeons and he had close, lifelong relationships with patients. The three patients Dr. Friederichs called at trial each testified that they have not seen a doctor for their orthopedic needs other than him since they received the Jan. 5 letter. They each made it clear, as did Dr. Friederichs, that all they needed to do was place a phone call or send a text message to Dr. Friederichs to confirm that he would see them in the future. Dr. Husband's testimony further established that patients take great care in their selection of surgeons and consider multiple factors when making healthcare their decision. Dr. Husband's testimony was not rebutted or otherwise contested.

The evidence also established that the Feb. 4 letter was sent to the same patients and corrected the Jan. 5 letter. Dr. Friederichs did not provide any evidence that the clarification was ineffective. Instead, the unrebutted evidence established that an extraordinarily high number of patients followed him to his new practice. Additionally, Sanford has provided Dr. Friederichs's new contact information to patients who call or ask about him. And given the high degree of care patients generally use to select their orthopedic surgeon, simple internet searches would lead patients to OrthoDakota if they were looking for Dr. Friederichs.

Regarding the most important Lanham Act factor, actual confusion, Dr. Friederichs provided zero evidence. Dr. Friederichs failed to establish that Sanford intended to confuse or mislead patients or that there was a likelihood of confusion among the letter recipients. The Court should rule as a matter of law in favor of Sanford on Dr. Friederichs's Lanham Act claim.

### C.    No Evidence of Damages, Revenues, or Proximate Cause.

Dr. Friederichs sought actual damages and to disgorge Sanford's profits. He was required to present evidence that a violation of the Lanham Act caused Sanford to receive those profits. He was

also required to present evidence that a Lanham Act violation proximately caused him damage. He did not present evidence on either of these points and the jury was required to speculate about why a small number of patients chose to keep their care at Sanford after receiving both letters.

"[B]efore a case under [the Lanham Act] can proceed to a jury, the district court must ensure that the record adequately supports all items of damages claimed and establishes a causal link between the damages and the defendant's conduct, lest the award become speculative or violate section 35(a)'s prohibition against punishment." *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 757 (8th Cir. 2003) (cleaned up) (citing *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1336 (8th Cir.1997)). Damages cannot be awarded unless there is " 'substantial evidence in the record to permit a factfinder to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages.' " *Id.* (quoting *Broan Mfg. Co., Inc. v. Associated Distributors, Inc.*, 923 F.2d 1232, 1236 (6th Cir. 1991)).

At the close of Dr. Friederichs's evidence, Sanford sought directed verdict because Dr. Friederichs had failed to provide evidence that a Lanham Act violation caused him damage and, if he had, a factual basis for the jury to make a fair and reasonable assessment of his damages. *Group Health Plan,*, 344 F.3d at 761  (affirming district court's grant of summary judgment because plaintiffs had presented no evidence demonstrating the amount of damages caused by the defendant tobacco companies' admitted conspiracy such that the jury would have to "arbitrarily" set a damage amount); *Johnson v. Monsanto Co.*, 303 N.W.2d 86, 95 (N.D. 1981) ("The trier of fact must be furnished data sufficient to determine damages without resort to mere speculation or conjecture."); *Sadek v. Weber*, 948 N.W.2d 820, 828 (N.D. 2020) ("Due to the lack of available evidence to suggest how, when, or even where Andrew Sadek died, a conclusion that his death was proximately caused by Defendants' acts or omissions would be based on speculation.").

No witness testified that a Lanham Act violation caused money damage to Dr. Friederichs. Dr. Friederichs talked generically about "damage" but never identified a single patient who selected

a different orthopedic surgeon because they thought he no longer wanted to treat them. He did not

testify or provide documents that showed how much money he claims to have lost. No document

admitted into evidence tied alleged confusion about the Jan. 5 letter to a decision to see a different

surgeon. Nor was there any expert testimony that attempted to link the claimed Lanham Act

violation to damage of any sort.

Dr. Friederichs conceded on cross-examination that patients may have elected to see a

different surgeon for any number of reasons, including health insurance, scheduling availability, a

desire to keep their care at Sanford, or idiosyncratic things like simply not liking Dr. Friederichs. The

jury was not given any evidence from which it could determine *why* some patients did not follow Dr.

Friederichs, even though an extraordinary number of patients followed him to his new practice.

The evidence Sanford presented reinforced concessions Dr. Friederichs had made in his

own testimony. Dr. Husband's unrebutted testimony established the numerous considerations that

go into a patient's surgical or orthopedic care decisions. Dr. Husband also testified that, not only

was Dr. Friederichs not damaged, but he likely benefited financially from the two letters and had

remarkably high rate of patient retention. None of Dr. Husband's testimony was rebutted.

There was no evidence—much less a preponderance—to establish that Dr. Friederichs

incurred past or future damage because of a Lanham Act violation. The undisputed evidence

established that patients make care decisions for a myriad of individual reasons. The jury could only

speculate why some patients chose to continue their care at Sanford. The jury was forced to guess

whether Dr. Friederichs sustained damage because patients were confused by the Jan. 5 letter. The

jury's verdict is not supported by sufficient evidence and the Court should rule as a matter of law

that Sanford is entitled to judgment on the Lanham Act claim.

## D.    Disgorgement of Profits is Not Appropriate.

"[T]he Lanham Act contemplates that a disgorgement or accounting of profits may be

appropriate to remedy unfair infringement." *Masters v. UHS of Del., Inc.*, 631 F.3d 464, 471 (8th Cir.

2011) (citing 15 U.S.C. § 1117(a)). However, disgorgement "is not automatic upon a finding of" false advertising. *Fifty-Six Hope Road Music, Ltd.* v. A.V.E.L.A., Inc., 778 F.3d 1059, 1073 (9th Cir. 2015) (citation omitted). "[T]he Lanham Act does not permit the award of monetary relief as a penalty." *Minn. Pet Breeders, Inc.*, 41 F.3d at 1247 (citing 15 U.S.C. § 1117(a)). "[B]ecause the Act is grounded in equity and bars punitive remedies, an accounting will be denied in a trademark infringement action where an injunction will satisfy the equities of the case." *Id.* (internal quotation omitted). Thus, "an injunction is the preferred Lanham Act remedy." *Id.*; *see also Martinizing Int'l LLC*, 855 F.3d at 852 (holding that following an injunction, only an "exceptional case" allows an award of actual damages, disgorgement, or attorneys' fees); *Kars 4 Kids, Inc. v. America Can!*, 8 F.4th 209, 223 (3rd Cir. 2021).

Disgorgement of profits is only appropriate if it is equitable, and the defendant profited from a Lanham Act violation. *See, e.g.*, *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 875–76 (5th Cir. 2019). A plaintiff must "present evidence that the defendant benefitted from the alleged false advertising." *Logan v. Burgers Ozark Cty. Cured Hams Inc.*, 263 F.3d 447, 465 (5th Cir. 2001); *Globefill Inc. v. Elements Spirits, Inc.*, 756 F. App'x 764, 765 (9th Cir. 2019) (disgorgement under the Lanham Act is only allowed for profits that are earned by the defendant and "attributable to" false advertising). Without such evidence, a Lanham Act plaintiff cannot recover a defendant's profits even if disgorgement would otherwise be equitable. *Retractable Techs.*, 919 F.3d at 876; *see also ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969 (D.C. Cir. 1990) ("[T]he court must ensure that the record adequately supports all items of damages . . . lest the award become speculative or violate [the Lanham Act's] prohibition against punishment."); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir. 1986) ("The amount to be awarded is the financial benefit [the defendant] received because of the advertising.").

In *Safeway Transit LLC, v. Discount Party Bus, Inc.*, 954 F.3d 1171, 1179 (8th Cir. 2020), the Eighth Circuit affirmed the district court's rejection of a disgorgement claim even after the district court found infringement under the Lanham Act. The district court rejected the disgorgement claim

11

because the plaintiff had not proven what revenue the defendant received because of the infringement. *Id.*, at 1179-1180. The Eighth Circuit affirmed, noting: "The trademark holder has the burden to prove the defendant infringer's gross revenue from the infringement." *Id.*, at 1180 (quoting *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1076 (9th Cir. 2015)).

Disgorgement was the centerpiece of Dr. Friederichs's claim throughout this litigation. When both letters were sent, Dr. Friederichs was still a Sanford employee. Any revenue Sanford received during the disgorgement period, which the Court defined as the period between the Jan. 5 and Feb. 4 letters, would have been Sanford's revenue regardless of whether Dr. Friederichs provided the care or whether the patients saw another surgeon. Additionally, as established by the evidence, during this period Dr. Friederichs was paid based on his previous year's performance and the other surgeons who saw any of "his" patients were also paid for seeing the patients. Thus, during the alleged infringement period, Sanford received less net income for care provided to patients who saw someone other than Dr. Friederichs.

Dr. Friederichs presented no evidence that Sanford received any revenue or profit *because* patients were misled by the Jan. 5 letter. Dr. Friederichs's expert was instructed to *assume* that a small number of patients had seen a different surgeon because they were confused by the Jan. 5 letter.[2] None of the three patients who testified at trial said that they saw an orthopedic physician other than Dr. Friederichs because they were confused by the letter. No evidence was presented showing causation. The Court should rule, as a matter of law, that Dr. Friederichs is not entitled to disgorge Sanford's profits, as small as they may have been.

### E.    The Evidence Did Not Support an Award of Actual Damages.

Claims brought under the Lanham Act must be supported by evidence that the wrongful act was the proximate cause of injury. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014) (a Lanham Act plaintiff "must show economic or reputational injury flowing directly

---

[2] Mr. Van Schooneveld had not disclosed and was therefore not allowed to provide opinions about claimed past damage.

from the deception wrought by the defendant's advertising"). This limitation is necessary because Congress did not intend "to allow all factually injured plaintiffs" under the statute "to recover," and thus the Lanham Act must "not get such an expansive reading" as to include "any person who believes that he or she is likely to be damaged" despite the language of the statute. *Id.* at 129. Damages under the Lanham Act "may not be awarded on the basis of speculation or conjecture." *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1122 (8th Cir. 1999); *see also McClaran v. Plastic Industries, Inc.*, 97 F.3d 347, 361 (9th Cir. 1996).

 "[T]o recover money damages under the [Lanham Act], a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages." *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1042 (8th Cir. 1999) (quotations omitted). A plaintiff may not recover under the Lanham Act if he or she fails to prove that the defendant's actions caused the claimed harm. *Rhone-Poulenc Rorer Pharm., Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 515 (8th Cir. 1996) (quotations and citations omitted); *see also Wing Enterprises, Inc.*, 511 F. Supp. 3d at 973-74 (D. Minn. 2021) ("A plaintiff's burden is at its highest when it seeks monetary damages.")

Per the Court's instructions, in considering actual damages under Dr. Friederichs's Lanham Act claim, the jury was to consider (1) injury to Dr. Friederichs's reputation; (2) injury to Dr. Friederichs' goodwill; (3) lost profits that Dr. Friederichs would have earned but for Sanford Health's false endorsement; and (4) the cost of corrective advertising reasonably required to correct any public confusion caused by the false endorsement. (Dkt. 176, p. 14). Any such damages needed to be proximately caused by a Lanham Act violation. *Id.*

As discussed above, there was no evidence that the Jan. 5 letter caused a patient to see a different physician because they were misled. Additionally, Dr. Friederichs failed to provide evidence of any of the four factors of actual damage under the Lanham Act. He offered no evidence that his reputation was harmed by Sanford's letters. The three patients who testified did not say they viewed him differently and Dr. Friederichs himself did not testify about any claimed reputational damage.

13

Nor was there any expert testimony or documentary evidence to support a claim that his reputation was harmed. With respect to claimed reputational damages, the evidence must show "some injury and must establish sufficient data from which the jury could estimate the amount." *Pemberton v. OvaTech, Inc.*, 669 F.2d 533, 541 (8th Cir. 1982) (ordering remitter of jury's award because plaintiffs could not show more than nominal damages regarding damage to their reputation); *see also G & H Soybean Oil, Inc. v. Diamond Crystal Specialty Foods, Inc.*, 796 F. Supp. 1214, 1217 (S.D. Iowa 1992) ("business reputation and goodwill are tied closely with the production of profits"). As in *Pemberton*, Dr. Friederichs presented zero evidence concerning damage to his reputation or the value thereof. The jury could only speculate about whether Dr. Friederichs's reputation was damaged.

The same is true for goodwill. Dr. Friederichs did not submit any evidence that he had goodwill, what it was worth, or how it was allegedly damaged. The Supreme Court has noted the difficulty in defining goodwill, but has nonetheless cited the following definition favorably:

> "the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessity, or even from ancient partialities or prejudices."

*Newark Morning Ledger Co. v. United States*, 507 U.S. 546, 555 (1993) (quoting *Metropolitan Bank v. St. Louis Dispatch Co.*, 149 U.S. 436 (1893). In North Dakota, "[t]he goodwill of a business is the expectation of continued public patronage, but it does not include a right to use the name of any person from whom it was acquired." N.D.C.C. § 47-07-10.

"Factors to be considered in determining the loss of goodwill are the following: the length of time the business has been in existence; its average profits; its success; and the likelihood of its continuing business under the same name." *Agric. Services Ass'n, Inc. v. Ferry-Morse Seed Co., Inc.*, 551 F.2d 1057, 1070 (6th Cir. 1977). "It follows, then, that a relatively new business would have little if any established goodwill . . . ." *Stallworth Timber Co. v. Triad Bldg. Supply*, 968 F. Supp. 279, 284 (D.V.I. 1997) (citing *Id.*) "A company does not have any corporate goodwill when all of the goodwill is

attributable solely to the personal ability of an employee." *Bross Trucking, Inc. v. C.I.R.*, 107 T.C.M. (CCH) 1528 (T.C. 2014).

Dr. Friederichs did not present any evidence of goodwill. The evidence showed that Dr. Friederichs had not established any goodwill at his new practice because:

- Dr. Friederichs had not started OrthoDakota by the time both letters were sent.

- Dr. Friederichs had no average profits through OrthoDakota at the time both letters were sent.

- OrthoDakota, when started, would only have had goodwill attributable to the personal ability of two surgeons; there was no ongoing goodwill developed from lengthy operation of the business.

- Dr. Friederichs did not have any capital, stock, funds, or property employed in OrthoDakota that could be valued.

- Dr. Friederichs had no habitual customers at OrthoDakota at the time the letters were sent.

" 'Goodwill' is the difference between the purchase price paid for a business and the fair value of the net assets acquired." *Hughes v. Huron Consulting Group, Inc.*, 733 F. Supp. 2d 943, 946 n.3 (N.D. Ill. 2010). In other words, goodwill represents the value a business acquires via its ongoing operations that exceeds its book value and consistent with a business with regular patronage. Even if an individual could have goodwill, which Sanford disputes, Dr. Friederichs did not have any goodwill at his new practice at the time that the letters were sent. The jury was left to speculate because there was no evidence to establish that Dr. Friederichs goodwill or that it had been harmed by the Jan. 5 and Feb., 4 letters. *Roundhouse v. Owens-Illinois, Inc.*, 604 F.2d 990, 995 (6th Cir. 1979) ("Since the plaintiffs could not prove the profitability of their business, or assign any kind of a goodwill value to it, it would have been sheer speculation on the jury's part to try to establish a figure for lost goodwill.")

With respect to the final two elements of actual damages, Dr. Friederichs did not present evidence of lost profits or of corrective advertising because he had neither. Presenting evidence of

what his damages would be if the jury *assumed* that certain patients would have gone to him in the future is insufficient. There is simply no evidence of either element to support the jury's verdict.

In *Blue Dane Simmental Corp.*, the plaintiff filed a Lanham Act false advertising lawsuit based on an allegedly false registration of nineteen cattle as full-blooded "Simmental" breed where the cattle were partly Angus. *Blue Dane Simmental Corp.*, 178 F.3d at 1039. The Eighth Circuit affirmed the trial court's grant of a motion for judgment as a matter of law following a nine-day jury trial where the plaintiff had failed to present evidence that any consumers purchased artificial insemination services from the defendants "because of a mistaken belief in the genetic makeup of these animals based upon the advertisements." *Id.* at 1043. Accordingly, the jury did not have a legally sufficient evidentiary basis to find that the advertisement was false or misleading. *Id.* The Eighth Circuit further found that, even if a Lanham Act violation was assumed, the plaintiffs had failed to provide the jury with a legally sufficient evidentiary basis to find that they were damaged. *Id.* Specifically, the only evidence of actual damages caused by the advertisements was "plaintiffs' testimony that they believed that their sales had dropped . . . ." *Id.* at 1043.

The evidentiary structure of Dr. Friederichs's case was similar to that in *Blue Dane Simmental Corp.*. Dr. Friederichs lacked evidence that patients used Sanford *because of* the allegedly false advertisement. And even if a Lanham Act violation was presumed, the only evidence that Dr. Friederichs was damaged was his own vague and unsubstantiated testimony. He simply and generally claimed that he was damaged. This is insufficient under the Lanham Act and binding Eighth Circuit precedent. The Court should rule as a matter of law that Dr. Friederichs's Lanham Act fails because of an absence of actual damage.

### F.    Lost Future Profits Could Not be Awarded.

Dr. Friederichs asserted that he was entitled to lost future profits based on the notion that any person for whom he performed a total knee or shoulder replacement in the past would need the opposite knee or shoulder replaced in the future and such people would have chosen him to

perform the second surgery at some point in the future but for the Jan. 5 letter (and despite having received the Feb. 4 letter). In addition to the same causation problems described in this brief, Dr. Friederichs never established—to a reasonable degree of medical certainty—that these patients would need a second total knee or shoulder replacement.

North Dakota "has long required that expert medical opinions be expressed in terms of reasonable medical certainty, not mere possibilities." *Klimple v. Bahl*, 727 N.W.2d 256, 261 (N.D. 2007). Dr. Friederichs did not state that the opinions he offered about the lost profit patients and their future medical care were provided to a reasonable degree of medical certainty. He was not asked and did not provide opinions about future care needs using the requisite medical certainty. It is standard practice to ask an expert—especially a medical expert—to express their opinions to a specified degree of certainty.

Dr. Friederichs did not state, to a reasonable degree of medical certainty, that each of the future lost profit patients would need their opposite joint replaced. Without that, Mr. Van Schooneveld's calculations lack the required expert support to establish that the claimed future medical care will be needed. The Court should rule as a matter of law that Dr. Friederichs may not recover lost future profits. *See Klimple*, 727 N.W.2d at 261-63; *Kunnanz v. Edge*, 515 N.W.2d 167, 172 (N.D. 1994); *Nelson v. Trinity Med. Ctr.*, 419 N.W.2d 886, 892 (N.D. 1988); *Smith v. American Family Mut. Ins. Co.*, 294 N.W.2d 751, 763-64 (N.D. 1980); *Dehn v. Otter Tail Power Co.*, 251 N.W.2d 404, 412 (N.D. 1977); *Grenz v. Werre*, 129 N.W.2d 681, 689 (N.D. 1964); *Vaux v. Hamilton*, 103 N.W.2d 291, 295 (N.D. 1960).

## II.    This is Not an Exceptional Case and Remedies Like Disgorgement and Actual Damages are Not Appropriate.

Even if the Court finds that there was sufficient evidence to support the jury's verdict on the basic elements of Dr. Friederichs's false endorsement claim, he is still not entitled to money damages. Because the parties stipulated to a corrective letter and a going forward communication agreement in February 2022, a formal injunction was unnecessary. To obtain any other remedy

under the Lanham Act, Dr. Friederichs had to show that this was an "exceptional" case. *Wing Enterprises*, 511 F. Supp. 3d at 978; *Martinizing Int'l, LLC v. BC Cleaners, LLC*, 855 F.3d 847, 852 (8th Cir. 2017) ("[O]n this record we conclude Martinizing failed to prove that BC Cleaners' conduct makes this the kind of exceptional case that would entitle Martinizing to damages, an accounting of infringer profits, or attorneys' fees, in addition to the injunctive relief we have upheld."). "Because the Lanham Act is grounded in equity and bars punitive remedies, 'relief in a Lanham Act case should be limited to an injunction if that is sufficient to do equity.'" *Id.* (quoting *Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc.* , 41 F.3d 1242, 1247 (8th Cir. 1994) (citations omitted)).

This was never an "exceptional" case that would allow Dr. Friederichs to seek disgorgement or damages. The evidence does not support a finding that the corrective letter and stipulated order issued two and a half years ago should be supplemented with other Lanham Act remedies. *Wing Enterprises, Inc. v. Tricam Indus., Inc.*, 511 F. Supp. 3d 957, 978 (D. Minn. 2021). "'[E]xceptional,' as Congress used the word in . . . the Lanham Act, is most reasonably read to mean what the word is generally understood to indicate—uncommon, not run-of-the-mill." *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985). District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, 134 S.Ct. 1749 (2014) (interpreting similar language in the patent statutes). A district court may consider a nonexclusive list of factors, including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

This case involved a single communication—not a lengthy or voluminous intentionally misleading advertising campaign. And while Sanford believes the evidence established that it did not knowingly intend to mislead patients to harm Dr. Friederichs, Sanford promptly tried to meet with

Dr. Friederichs to discuss the Jan. 5 letter. Dr. Friederichs had already engaged lawyers and refused to meet. After this lawsuit was started, Sanford quickly agreed to issue the corrective letter and a going forward plan regarding future communications, making the preferred remedy under the Lanham act – an injunction – moot. *See Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir. 1994) (citing 15 U.S.C. § 1117(a)). Sanford also changed its practices to be sure a similar mistake would not happen again. Dr. Friederichs did not present evidence that Sanford: (1) took a frivolous position with respect to the Jan. 5 letter; (2) had a bad motive in sending the Jan. 5 letter; (3) was objectively unreasonable in the factual or legal components of this case; or (4) needed deterrence.

The evidence presented at trial established that Sanford: (1) made an honest mistake in not showing the letter to Dr. Friederichs; (2) took ownership of that mistake; (3) tried to meet with Dr. Friederichs; (4) and quickly agreed to a correction while Dr. Friederichs was still a Sanford employee and six weeks before his new practice opened. The evidence established that Sanford employees like Mike Erickson contemporaneously acknowledged that the letter was a mistake. Dr. Piatt, who did not know that his longtime colleague was secretly recording their conversations, reiterated that Sanford "owns up" to not showing the letter to Dr. Friederichs before it was sent. In addition, and unlike cases that have been found to be exceptional, Sanford promptly agreed to a corrective letter that included Dr. Friederichs's new contact information—an act that the undisputed testimony in the case described as unusual. And Dr. Friederichs offered no evidence to contradict the opinions and patient data discussed by Dr. Husband that the net effect of the two letters likely increased Dr. Friederichs's new business. The Court should conclude that this is not an exceptional case in which damages or disgorgement should be awarded.

The only evidence Dr. Friederichs offered that Sanford intended to harm him was his own conclusory testimony about his staged secret recordings in which he talked about Sanford "amputating" his practice and being "attacked and abused" because he was leaving. (Trial Ex. P131).

19

This is not an exceptional case simply because Dr. Friederichs believes, without any other evidence, that Sanford intended to harm him and because he then chose to exhaustively litigate the case for two and a half years after the Feb. 4 corrective letter.

Dr. Friederichs also seeks disgorgement, which the jury found to total $1,300. The Court can only uphold this award under the principles of equity, which include: (1) unjust enrichment, (2) damages, or (3) deterrence of a willful infringer. *Masters v. UHS of Delaware, Inc.*, 631 F.3d 464, 475 (8th Cir. 2011). If allowed, the profits to be disgorged must be those "attributable" to the infringement. *See Safeway Transit LLC v. Disc. Party Bus, Inc.*, 954 F.3d 1171, 1181 (8th Cir. 2020).

Dr. Friederichs did not establish that Sanford was unjustly enriched or that he sustained any damage attributable to a Lanham Act violation. He also failed to show that Sanford was a willful infringer in need of deterrence. Sanford made a mistake, agreed to correct the mistake, and agreed to only communicate about Dr. Friederichs via an agreed statement while providing his new contact information to patients. And, again, Dr. Friederichs was a Sanford employee during the alleged infringement period and any revenue obtained for services he would have performed would have been Sanford's. If anything, Sanford would have lost money if patients chose surgeons other than Dr. Friederichs because those surgeons would be paid for seeing the patients while Sanford still needed to pay Dr. Friederichs as if he had seen them.

After years of litigation and a two-week trial, Dr. Friederichs could not prove that this is an exceptional case justifying an award of damages and disgorgement. The Court should find as a matter of law that Dr. Friederichs is not entitled to monetary damages including attorneys' fees, disgorgement of profits, or actual damages. Even if the Court finds that this is an exceptional case and such damages are available, Dr. Friederichs failed to show that a violation caused Sanford to receive revenue, that he was damaged because of a Lanham Act violation, or that the Court should award disgorgement under the principles of equity. The Court should grant judgment in Sanford's favor on the Lanham Act claim.

### III.   Dr. Friederichs Did Not Produce Sufficient Evidence to Support a Verdict on the USAPA Claim.

As discussed above, Dr. Friederichs failed to present evidence that a deceptive act by Sanford caused it to acquire money, which mandates judgment as a matter of law in favor of Sanford on the USAPA claims. There is no private cause of action without such a showing.

The USAPA prohibits the use of deceptive practices "in connection with the sale or advertisement of any merchandise." N.D.C.C. § 51-15-02. However, a private cause of action does not arise under the Act unless the plaintiff shows that the defendant acquired "moneys" as a result of the unlawful conduct. *See* N.D.C.C. § 51-15-02. Dr. Friederichs had to prove that Sanford intentionally violated the Act and acquired money because of that violation. *Staal v. Scherping Enters., Inc.*, 466 F. Supp. 3d 1030, 1034 (D. N.D. 2020). "Section 51-15-09 is clear that a private cause of action cannot arise unless a person actually 'acquired . . . moneys or property by means of' unlawful conduct." *Woodmont Co. v. LaSalle Shopping Ctr., LLC*, No. 1:17-cv-0073 (PDW), 2020 WL 2857164, at *16 (D. N.D. June 2, 2020) (quoting N.D.C.C. § 51-15-09); *Benz Farm, LLP v. Cavendish Farms, Inc.*, 803 N.W.2d 818, 824 (N.D. 2011)).

Between the Jan. 5 and Feb. 4 letters, Dr. Friederichs was a Sanford employee. Regardless of whether a patient chose to continue seeing Dr. Friederichs or decided to switch surgeons because of the Jan. 5 letter, Sanford would have received the "moneys" paid by that patient. And Sanford would have actually profited more from patients who continued to see Dr. Friederichs because, following his resignation, he was paid based on the previous year's production regardless of whether he saw patients. Sanford had to pay two surgeons for patients who saw someone else during the resignation period.

Even if Dr. Friederichs met his burden on whether Sanford obtained moneys via the letters, he failed to present sufficient evidence on the merits of the USAPA claim. To prove an unlawful sales or advertising practice, Dr. Friederichs was required to prove:

1. Sanford acted, used, or employed a deceptive act or practice, fraud, false pretense, false promise, or misrepresentation; and

2. Sanford intended that others rely on Sanford's act, use, or employment of a deceptive act or practice, fraud, false pretense, false promise, or misrepresentation in connection with the sale or advertisement of its services. Dr. Friederichs is not required to prove others were in fact misled, deceived, or damaged by Sanford's actions.

N.D.C.C.§ 51-15-02. Dr. Friederichs needed to prove his statutory claim by a preponderance of the evidence. *State ex rel. Spaeth v. Eddy Furniture Co.*, 386 N.W.2d 901, 903 (N.D. 1986). "The Act provides for a private cause of action for parties who have suffered actual damages if the court finds the defendant knowingly committed the conduct declared unlawful under the Act." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, Civil Case No. 4:13-CV-10, 2015 WL 11156906, at *4 (D. N.D. July 7, 2015).

The Court should conclude that Dr. Friederichs did not prove, by a preponderance of the evidence, that Sanford knowingly violated the USAPA. Dr. Friederichs offered only argument that Sanford intended to mislead recipients of the Jan. 5 letter. The evidence established that a lack of training and poor communication about responsibilities led to the letter being sent without Dr. Friederichs's approval. There was no evidence that Sanford intended to send a misleading patient communication. The Court should rule, as a matter of law, in favor of Sanford on Dr. Friederichs's USAPA claim.

Dr. Friederichs also had to prove causation, actual damages, and intended reliance to recover "any moneys," including treble damages or attorney's fees. N.D.C.C. § 51-15-09. As with his other claims, Dr. Friederichs did not admit evidence to support causation or actual damage under the USAPA. The absence of any evidence that a patient would have seen Dr. Friederichs but for the Jan. 5 letter and his consequential inability to show actual damage is fatal to this claim. *See Group Health Plan, Inc.*, 344 F.3d at 761; *Johnson*, 303 N.W.2d 86 at 95; *Sadek*, 948 N.W.2d at 828.

## IV.    Sanford is Entitled to Judgment on the Claim for Exemplary Damage.

A claim for exemplary damages in North Dakota is derivative of another cause of action,

and "no award of exemplary damages may be made if the claimant is not entitled to compensatory damages." N.D.C.C. § 32-03.2-11(4); *see also Thimjon Farms P'ship v. First Int'l Bank & Trust*, 837 N.W.2d 327, 340 (N.D. 2013) (claim for punitive damages is futile in the absence of a viable substantive claim); *Hilton v. N.D. Educ. Ass'n*, 655 N.W.2d 60, 69 (N.D. 2002) (punitive damages are not allowed in the absence of compensatory damages).

The jury ruled against Dr. Friederichs on his breach of contract claim and exemplary damages are not available under the Lanham Act.[3] *See Corizon, Inc. v. Wexford Health Sources, Inc.*, 4:10 CV 2430 DDN, 2013 WL 791788, at *5 (E.D. Mo. Mar. 4, 2013) ("The Eighth Circuit has determined that the Lanham Act provides equitable relief, such as an injunction, and not a remedy at law, like punitive damages."); *Martinizing Int'l, LLC v. BC Cleaners, LLC*, 855 F.3d 847, 852 (8th Cir. 2017) ("[T]he Lanham Act is grounded in equity and bars punitive remedies . . . ."); *Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir. 1994) ("[T]he Lanham Act does not permit the award of monetary relief as a penalty . . . and bars punitive remedies . . . .").

Thus, the only claim that could support Dr. Friederichs's award of exemplary damages is his claim under the USAPA. Because Dr. Friederichs's claim under the USAPA fails for the reasons above, the Court should direct entry of judgment against Dr. Friederichs on his claim for exemplary damages. Even if the jury's verdict is allowed to stand on Dr. Friederichs's claim under the USAPA, Dr. Friederichs was required to prove Sanford's "oppression, fraud, or actual malice" by "clear and convincing evidence." N.D.C.C. § 32-03.2-11(1). "Clear and convincing evidence means that the evidence leads [the jury] to a firm belief or conviction that the allegations are true." (Doc. 185, p. 6).

Dr. Friederichs's counsel admitted that oppression was not applicable and instead argued that Sanford committed fraud and was actually malicious. The Court instructed as follows with respect to fraud:

As a basis for awarding exemplary damages, "fraud" is:

---

[3] Exemplary damages are also not available under a breach of contract theory. *See* N.D. Cent. Code Ann. § 32-03.2-11(1).

(1)    the suggestion as fact of that which is not true by one who does not believe it to be true;

(2)    the assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

(3)    the suppression of a fact by one who is bound to disclose it, or who gives information that is likely to mislead because that fact was not communicated; or

(4)    a promise made without any intention of performing.

(Doc. 185, p. 4). Dr. Friederichs admitted zero evidence that Sanford employees knew the Jan. 5 letter would be sent without Dr. Friederichs's approval or intended to assert facts that were not true. In fact, Dr. Friederichs did not produce any evidence that anything in the Jan. 5 letter was false other than his own biased testimony.

To prove actual malice, Dr. Friederichs was required to show Sanford had "an intent with ill will or wrongful motive to harass, annoy, or injure." *McHugh v. Jacobs*, 450 F.Supp.2d 1019, 1022 (D.N.D. 2006) (quotation omitted). "Direct evidence of actual malice is not required"; instead, "the character of the act itself, with all its surrounding facts and circumstances, may be inquired into for the purpose of ascertaining the motive or purpose which influenced the mind of the party in committing the act." *Stoner v. Nash Finch, Inc.*, 446 N.W.2d 747, 754 (N.D. 1989). (citation and quotation marks omitted). "[I]f that motive is found to be improper or unjustifiable, the law authorizes the jury to find it was malicious." *Id.* (citation and quotation marks omitted).

Dr. Friederichs offered neither direct evidence nor "surrounding facts and circumstances" evincing any malice on Sanford's part. The evidence presented at trial showed that Sanford did not intend to mislead patients or harm Dr. Friederichs. The Jan. 5 letter was an oversight by multiple Sanford employees who made the assumption that someone else would show the letter to Dr. Friederichs. An oversight is not actual malice.

Finally, the Feb. 4 letter corrected the Jan. 5 letter. Even if a retraction is not a per se bar to exemplary damages in North Dakota, courts in jurisdictions with legislation requiring a pre-suit

demand for retraction recognize that a retraction limits a plaintiff to only actual damages. *See, e.g.,* *Paragon v. Native American Publishing, Inc.*, 542 N.W.2d 125 (S.D. 1996) (citing *Meyerle v. Pioneer Pub. Co.*, 45 N.D. 568, 178 N.W. 792, 795 (1920) and *Clementson v. Minnesota Tribune Co.*, 45 Minn. 3037 N.W. 781 (1891)); *see also Ross v Gore*, 48 S2d 412, 414 (Fla. 1951); *Ellis v Brockton Publishing Co.*, 198 Mass. 538, 84 N.E. 1018, 1020 (1908); *Comer v. Age-Herald Publishing Co.*, 151 Ala. 613, 44 So. 673 (1907); *Osborn v. Leach*, 135 N.C. 628, 47 S.E. 811 (1904); *McGee v. Baumgartner*, 121 Mich. 287, 80 N.W. 21, 22 (1899).

Dr. Friederichs is not entitled to an exemplary damages award because he has no underlying claim on which to base it. Regardless, Dr. Friederichs did not produce sufficient evidence for the jury to find by clear and convincing evidence that Sanford acted fraudulently, oppressively, or with actual malice.

## V.    The Jury's Award Should Be Reduced to Comply with Constitutional Limits.

"[T]he Constitution provides an upper limit on punitive damage awards so that a person has fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that may be imposed." *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1048–49 (8th Cir. 2002)(cleaned up). In evaluating the constitutionality of a punitive damages award, the following factors should be considered: "the degree of reprehensibility of the defendant's conduct; the ratio or relationship between actual harm inflicted on plaintiff and the punitive damages award; and civil penalties authorized for comparable misconduct." *Id.* at 1049. While remittitur of a punitive damages award entitles the plaintiff to the option of a new trial, the reduction of an excessive punitive damages award in conformity with constitutional limits does not. *See id.* at 1049-50.

Sanford made a mistake and quickly corrected it, then changed its policies so that it could not happen again. This conduct is hardly reprehensible. The ratio between the damage awarded on the USAPA claim ($24,250.00) and the jury's exemplary damages award ($240,000.00) is extreme. And, civil penalties for more severe conduct are far lower than $240,000.00. Under Section

5(m)(1)(B) of the FTC Act, if after receiving notice from the FTC of its unfair or deceptive practices a company proceeds with that practice, they are subject to a fine of no more than $50,120.00[4] *See* 15 U.S.C.§ 45(m)(1)(B). Sanford's conduct here is far less egregious, yet it was punished five times more severely.

"The Supreme Court has stated that 'an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety.' " *Grant on behalf of United States v. Zorn*, 107 F.4th 782, 799 (8th Cir. 2024)(quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)). The Eighth Circuit has found that where "defendants' scheme to defraud the government spanned two states and more than six years" a punitive damages sanction of 4.3 times the actual damages was appropriate. *Id.* (citing *United States v. Aleff*, 772 F.3d 508, 513 (8th Cir. 2014)). Here, the exemplary damages award is nearly ten times the actual damage award and Sanford's conduct is much less extreme, in fact, it does not even justify an exemplary award at all. In the alternative to the relief requested above, considering the relevant factors and in compliance with constitutional limits, if the jury's exemplary damages award is to stand, it should be reduced to the amount of Dr. Friederichs's actual damage under the USAPA - $24,250.00.

## Conclusion

The Court should rule as a matter of law that Dr. Friederichs failed to provide a sufficient evidentiary basis to support the jury's verdict and, accordingly, that Dr. Friederichs take nothing on his claims.

---

[4] The statute specifies a fine of $10,000.00 but the number is adjusted annually for inflation.

Date: <u>November 4, 2024</u>

**LARSON • KING, LLP**

<u>*s/ Shawn M. Raiter*</u>
Shawn M. Raiter (ND 05712)
Angela Beranek Brandt (ND 08130)
Zane P. Aubert
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN  55101
Tel: (651) 312-6500
Fax: (651) 312-6618
sraiter@larsonking.com
abrandt@larsonking.com
zaubert@larsonking.com

**Attorneys for Sanford Health**