## UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA

---

Matthew Friederichs, M.D.,                                  Case No. 3:22-cv-0008-PDW-ARS

                Plaintiff,

vs.

Sanford Health,

                Defendant.

---

### Sanford Health's Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees and Trebling of Damages

---

David L. Hashmall (MN 138162)
Daniel R. Kelly (MN 247674)
Brandond J. Wheeler (MN 396336)
**FELHABER LARSON**
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
Tel: (612) 339-6321
dhashmall@felhaber.com
dkelly@felhaber.com
bwheeler@felhaber.com

*Attorneys for Plaintiff*

Shawn M. Raiter (ND 05712)
Angela Beranek Brandt (ND 08130)
Zane P. Aubert
**LARSON • KING, LLP**
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN 55101
Tel: (651) 312-6500
sraiter@larsonking.com
abrandt@larsonking.com
zaubert@larsonking.com

*Attorneys for Sanford Health*

## Introduction

After obtaining a jury verdict totaling less than 5% of what he sought after years of litigation, Dr. Friederichs now requests a fee award that far eclipses his actual success. But even a reduced fee award should not be issued because this has never been the rare, exceptional case in which fees can be awarded under the Lanham Act. Nor is this a case for which attorneys' fees are available under the North Dakota unfair advertising statute. The Court should deny Dr. Friederichs's motion.

Throughout the case, Dr. Friederichs heavily litigated his disgorgement theory and claimed to be entitled to a disgorgement award totaling nearly $800,000.00. At summary judgment, three of Dr. Friederichs's tort claims were dismissed. Shortly before trial, Dr. Friederichs disclosed in pleadings that he was seeking at least $6,294,880.00. At trial, the jury found in Sanford's favor on one claim and in Dr. Friederichs's favor on two claims. It awarded $24,250.00 for each claim and found that Sanford had received $1,300.00 in profit for providing care for the at-issue patients. The jury also awarded $240,000.00 in exemplary damages in the second trial phase.

Despite his very limited success, Dr. Friederichs now seeks nearly $700,000.00 in fees and expenses because he decided to relentlessly litigate this case despite the Feb. 4 corrective letter. As briefed in Sanford's contemporaneously filed renewed Rule 50 motion, Dr. Friederichs did not offer sufficient evidence to support the jury's verdict, and the Court should rule that Dr. Friederichs takes nothing on his claims. On that basis alone, this motion should be denied.

Nonetheless, should the Court find that the jury's verdict, or some part of it, should stand, the record does not permit an award of attorneys' fees or treble damages. Dr. Friederichs primarily relies on the jury's verdict to argue that Sanford "knowingly" misled patients and that this is an "exceptional" case. However, caselaw establishes that the jury's verdict is irrelevant to the Court's consideration of these issues. Dr. Friederichs relies on the verdict because there is no evidence this was an "exceptional" Lanham Act case or that Sanford knowingly committed an unlawful act under the North Dakota Unlawful Sales or Advertising Practices Act (the "USAPA").

Even before he filed this lawsuit, Dr. Friederichs took an unreasonable approach and ran up attorneys' fees when he had no damage. Presumably he did this because he expected to be awarded all his fees and expenses, regardless of how excessive they were. Statutory provisions permitting recovery of attorneys' fees are not meant to encourage a personal vendetta by a disgruntled former employee-turned competitor. *See Jones v. RK Enterprises of Blytheville, Inc.*, No. 3:13-CV-00252-BRW, 2016 WL 1091094, at *6 (E.D. Ark. Mar. 21, 2016), aff'd, 672 F. App'x 613 (8th Cir. 2016) ("The fact that a case involves fee shifting does not open the door to unwarranted billing that would otherwise never be incurred. Additionally, a lawyer is still required to do a cost-benefit analysis when considering whether to proceed to trial or settle a case, just as lawyer in a non-fee-shifting case would.")

If the Court finds that Dr. Friederichs is entitled to some attorneys' fees, the requested amount is unreasonable in light of: (1) the number of claims he won versus the number he litigated (2 of 6 = 33%); (2) the amount of damages he sought versus what he was awarded ($6,294,880.00 vs. $289,800.00 = 4.6%); (3) the amount of non-exemplary damages he sought versus the amount he actually obtained ($1,294,880.00 vs. $49,800.00 = 3.85%); (4) the amount of Sanford's profits he sought to disgorge versus the amount he proved ($777,168.00 vs. $1,300.00 = 0.167%); and (5) his overbroad and unreasonable approach to a straightforward case. The Court should not award Dr. Friederichs more than 10% of the attorneys' fees he seeks.

Finally, treble damages are only appropriate under either statute to adjust an award of actual damage that was inadequate. Dr. Friederichs does not even argue that is the case here. Rather, he asks that the Court treble his damages to punish and deter Sanford. Neither the Lanham Act nor the USAPA permit treble damages for punishment or deterrence.

## Background

On November 29, 2021, Dr. Friederichs provided notice that he was leaving Sanford. (Trial Exs. P024, P129). On December 13, 2021, without any indication that Sanford was not going to pay

him in accordance with his employment contract, Dr. Friederichs sent a letter to Sanford through legal counsel demanding he be paid in accordance with his contract, and threatening litigation and sanctions. (Trial Ex. P024). On January 5, 2022, Sanford sent a form letter signed by Dr. Friederichs to some of his former patients advising them that Dr. Friederichs was leaving Sanford. (Trial Ex. P001). Due to a process failure, Dr. Friederichs was not shown the letter before it was sent. (Erickson Testimony). On January 11, 2022, when Mike Erickson, the person primarily responsible for the process failure, found out, he texted – "I F'd up with [Dr. Friederichs's] letter . . . ." (Trial Ex. P102A).

On January 12, 2022, Dr. Friederichs's attorneys sent a letter demanding the names and information relating to the patients to whom the Jan. 5 letter was sent, or he would file a lawsuit. (Trial Ex. P056). He provided no other options to Sanford; it was his way or litigation. *Id.* Sanford employees attempted to meet with Dr. Friederichs but he refused. (Trial Ex. P062). Instead of meeting with his long-term employer, Dr. Friederichs filed this lawsuit. (Doc. 1). About two weeks later, the parties agreed to a stipulated corrective letter that was sent to the same patients that received the Jan. 5 letter. (Doc. 23).

Before trial, the parties participated in Court-supervised settlement discussions but did not reach an agreement, and the case was tried. Following trial, the jury awarded Dr. Friederichs $24,250 on his USAPA claim and $24,250 in actual damages and $1,300 in disgorgement on his Lanham Act claim (Doc. 181). The jury found in favor of Sanford on the breach of contract claim. *Id.* In the second phase of trial, the jury awarded Dr. Friederichs $240,000 in exemplary damages. (Doc. 183).

## Argument

### I.    The Lanham Act Does Not Permit Dr. Friederichs to Recover Attorneys' Fees or Treble Damages.

Dr. Friederichs argues that his Lanham Act damage should be trebled and he should receive all of his attorneys' fees, despite his limited success. As briefed in the contemporaneously filed Renewed Motion for Judgment as a Matter of Law, which is incorporated by reference, any recovery

outside an injunction required Dr. Friederichs to show his case is "exceptional." He has not shown

an exceptional case and the Court's analysis should end there. However, even if the Court finds that

this is an exceptional case entitling Dr. Friederichs to damages, an award of attorneys' fees or treble

damages is discretionary, and the Court should decline to award either.

### A    This is Not an Exceptional Case Justifying an Award of Attorneys' Fees.

"The Lanham Act authorizes that a court 'in exceptional cases may award reasonable

attorney fees to the prevailing party.' " *First Nat. Bank in Sioux Falls v. First Nat. Bank S. Dakota*, 679

F.3d 763, 771 (8th Cir. 2012) (quoting 15 U.S.C. § 1117(a)). " '[E]xceptional,' as Congress used the

word in . . . the Lanham Act, is most reasonably read to mean what the word is generally understood

to indicate—uncommon, not run-of-the-mill." *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771

F.2d 521, 526 (D.C. Cir. 1985). In the "rare" cases that are found to be exceptional such that

attorneys' fees are authorized, the courts generally find blatantly indefensible conduct by the

defendant. *See Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1049–50

(D. Minn. 2015) (Finding case exceptional where defendant's "infringement was willful, deliberate,

and blatant[,]" and defendant "received two cease and desist letters, direct advice from its counsel,

and a court order explicitly prohibiting the use of confusingly similar terms to the protected mark[,]

yet its "infringement persisted."); *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus

Christ's Church*, 634 F.3d 1005, 1013–14 (8th Cir. 2011) (case was exceptional where defendant

willfully and deliberately used plaintiff's marks that it knew were protected, sent a letter to plaintiff

explaining they would continue to use the marks despite plaintiff's prior enforcement of its rights,

and continued using the marks following receipt of cease and desist letter); *Octane Fitness, LLC v.

ICON Health & Fitness, Inc.*, 572 U.S. 545, 555, 134 S. Ct. 1749, 1757 (2014) ("[A] district court may

award fees in the **rare** case in which a party's unreasonable conduct—while not necessarily

independently sanctionable—is nonetheless so "exceptional" as to justify an award of fees.")

And while Dr. Friederichs argues loudly that Sanford intended to harm him, the evidence

showed that the letter was a simple mistake. Nothing about this case was rare or exceptional under a Lanham Act analysis. This case involved—at best—a single misleading communication that was corrected within a short period of time while Dr. Friederichs was still a Sanford employee. Sanford—working through its counsel and Dr. Friederichs's counsel—agreed to send the letter and negotiated its contents and a going forward communication plan in less than two weeks after being sued on January 18, 2022. The Feb. 4 letter was sent more than five weeks before Dr. Friederichs's new practice opened. The Feb. 4 letter provided Dr. Friederichs's new contact information, which Sanford also agreed to provide if patients asked about Dr. Friederichs. The evidence at trial established that it is unusual for that information to be provided in letters to patients. Dr. Husband's testimony that an extraordinarily high number of patients followed Dr. Friederichs after receiving the Feb.4 letter was unrebutted and confirmed the efficacy of the correction. This case was not exceptional and Dr. Friederichs is not entitled to attorneys' fees under the Lanham Act.

Even if the Court finds this case to be exceptional, it may still decline to award attorneys' fees. *See First Nat. Bank in Sioux Falls*, 679 F.3d at 771 (citing *Minn. Pet–Breeders, Inc. v. Schell & Kampeter, Inc.*, 843 F.Supp. 506, 519 (D. Minn. 1993)) ("Because the statute states that the court 'may' award attorney's fees in exceptional cases, the district court retains discretion as to the award of attorney's fees even if it finds a case to be exceptional."); *see also Safeway Transit LLC v. Disc. Party Bus, Inc.*, 954 F.3d 1171, 1183 (8th Cir. 2020)). The Court can decline to award attorneys' fees where one aspect of the case was exceptional, but the more significant portion was not. *See First Nat. Bank in Sioux Falls*, 679 F.3d at 771-72 ("It was within the district court's discretion to find that, even if exceptional circumstances for purposes of § 1117 might exist in one aspect of the case, the predominance of a separate, unexceptional aspect weighed more heavily against the award of attorney's fees.")

In *First Nat. Bank in Sioux Falls*, First National Bank South Dakota ("FNB SD") adopted its name and began advertising in Sioux Falls, South Dakota, highlighting the term "First National

Bank." *Id.* at 766. First National Bank in Sioux Falls ("FNB SF"), which was already established in the area, filed claims for unfair use of its common-law service marks and successfully obtained an injunction that FNB SD could not use its name within ten miles of Sioux Falls. *Id.* Years later, FNB SD attempted to open a new branch in Sioux Falls, just two blocks from FNB SF's main office. *Id.* at 766-67. FNB SD also adopted a broad marketing campaign and aggressively marketed confusingly similar logo designs and terms to FNB SF. *Id.* at 767. FNB SF, who had obtained federal trademarks since the first lawsuit, sued to enforce the original injunction and under the Lanham Act for new likelihood of confusion arising from FNB SD's recent conduct. *Id.* at 767, 771. The district court found that the FNB SD's violation of the injunction aspect of the case was exceptional, but the new likelihood of confusion was the more significant aspect of the case and was not exceptional. "Accordingly, the district court exercised its discretion to award no attorney's fees." *Id.* at 763.

Dr. Friederichs seeks $60,647.50 in attorneys' fees incurred up to the point where the parties agreed to the order regarding the Feb. 4 letter. (Doc 191-1, p. 4). He seeks an award of $432,087.29 for attorneys' fees incurred to obtain an actual damage award of $24,250.00 after nearly three years of litigation. (Doc 191-1, p. 4). By far the most significant aspect of this case was the two years and seven months of aggressive litigation and trial that occurred following the corrective letter, not the several weeks that preceded the parties' agreed order. Yet, Dr. Friederichs's argument that this case is "exceptional" focuses entirely on events prior to the Feb. 4 letter. (Doc. 188, pp. 7-10). Even if the pre-order conduct is considered "exceptional," Dr. Friederichs has pointed to nothing following that order that makes this case exceptional. Just like in *First Nat. Bank in Sioux Falls*, the most significant aspect of this lawsuit is "not in any way exceptional." *First Nat. Bank in Sioux Falls*, 679 F.3d at 771. The Court should decline to award Dr. Friederichs fees under the Lanham Act.

Should the Court find that Dr. Friederichs is entitled to some attorneys' fees under the Lanham Act, those fees should be limited to those incurred prior to the agreed order, subject to reduction for reasonableness considerations below. Any other result would reward Dr. Friederichs

for unnecessarily incurring over $430,000.00 in attorneys' fees to obtain an award of $24,250.00. Such conduct should not be encouraged.

### B. Treble Damages Should Not Be Awarded.

As Sanford discussed in its motion for judgment as a matter of law, Dr. Friederichs did not present evidence that he sustained actual damage. The jury, nonetheless, awarded him $24,250.00 for his Lanham Act claim. He seeks to have that amount tripled without providing the Court with a proper basis to increase his actual damage award. Trebling under the Lanham Act requires a showing that the plaintiff has not been fully compensated. Dr. Friederichs has not and cannot make such a showing.

"If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117. "While the court may increase damages up to three times the amount of actual damages according to the circumstances of the case, such increased damages shall constitute compensation and not a penalty." *Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1050 (D. Minn. 2015) (cleaned up) *see also* 15 U.S.C. § 1117 ("Such sum . . . shall constitute compensation and not a penalty.").

In the present motion, Dr. Friederichs did not argue or submit evidence that his recovery was inadequate.[1] Rather, despite the Lanham Act's clear guidance, Dr. Friederichs seeks treble damages to punish and deter Sanford from similar conduct. (Doc. 188, p. 20). The plain language of the statute prohibits trebling damages to punish Sanford. *See* 15 U.S.C. § 1117. The Court must deny the request to treble the Lanham Act award.

## II.    The USAPA Does Not Permit Dr. Friederichs to Recover Attorneys' Fees or Treble Damages.

If Dr. Friederichs's USAPA claim is permitted to stand, he has still not provided sufficient

---

[1] Additionally, the verdict and the jury's question show that the jury already doubled the actual damage it found by awarding Dr. Friederichs the same damages twice. (Doc. 180-3; Doc. 181).

evidence for the Court to award him attorneys' fees or treble damages. Under the USAPA, "[i]f **the court** finds the defendant **knowingly committed** the conduct, the court **may order** that the person commencing the action recover up to three times the actual damages proven and the court must order that the person commencing the action recover costs, disbursements, and actual **reasonable** attorney's fees incurred in the action." N.D.C.C. § 51-15-09.

For statutes where "knowingly" is not defined, the North Dakota Supreme Court has looked to the definition of "knowingly" within the North Dakota Criminal Code. *See Snortland v. Crawford*, 306 N.W.2d 614, 622–23 (N.D. 1981). Accordingly, in *Snortland*, the Court found that knowingly does not mean "whether a reasonably prudent person knew or should have known that the statement was false; rather, the sponsor must have had a firm belief, unaccompanied by substantial doubt, in the falsity of the statement." *Id.* As Dr. Friederichs pointed out, the USAPA is remedial in nature, not penal. (Doc. 188, p. 6).[2]

Regardless of what definition the Court applies and assuming the Jan. 5 letter violated the USAPA, for Sanford to have knowingly committed the violation, the evidence needed to show that Sanford specifically knew Dr. Friederichs had not seen the Jan. 5 letter and deliberately sent it anyway. Negligence or recklessness on Sanford's part is not sufficient. *See Rodriguez v. Mena Hosp. Comm'n*, 2:23-CV-2002, 2023 WL 7198441, at *15 (W.D. Ark. Nov. 1, 2023) ("The Court agrees that the most natural reading of the phrase "knowingly divulge" requires more than alleging negligent or even reckless conduct.") The testimony of Dr. Piatt, Mike Erickson, and Emily Mangin—along with the documents admitted into evidence—confirmed that the letter was sent because each assumed or expected that someone else had discussed the letter with Dr. Friederichs. There was no evidence

---

[2] Black's Law Dictionary defines "knowingly" as "[i]n such a manner that the actor engaged in prohibited conduct with the knowledge that the social harm that the law was designed to prevent was practically certain to result; deliberately." Black's Law Dictionary (12th ed. 2024). Merriam-Webster defines "knowingly" as "with full awareness of what one is doing." https://www.merriamwebster.com/thesaurus/knowingly#:~:text=adverb,the%20defendant%20knowingly%20committed%20perjury.

that any of them knowingly and intentionally sent the letter to harm Dr. Friederichs.

Dr. Friederichs asks that the Court skip over an analysis of whether Sanford knowingly committed a violation of the USAPA and hold that the jury has already made such a finding. However, this does not make sense within the USAPA's statutory scheme and ignores the USAPA's clear mandate that the Court must make this finding. *See* N.D.C.C. § 51-15-09 ("if the court finds"). If the jury's finding of a violation under Section 51-15-02 equated to a finding of knowingly committed conduct, then there would be no need for Section 51-15-09 or its substantially heightened requirement for the recovery of attorneys' fees.

Dr. Friederichs's reference to the jury's exemplary damages verdict is similarly unavailing. First, as briefed in the renewed Rule 50 motion, that verdict is not supported by sufficient evidence. Second, it cannot be established whether the jury found oppression, fraud, or actual malice in issuing its verdict. Each is defined differently and incorporates a reckless or conscious disregard component. "Knowingly" requires more than negligence or recklessness, it requires deliberate conduct.

Sanford's conduct here was not deliberate. The evidence contemporaneous to the Jan. 5 letter shows that it was an unintentional mistake by Sanford. There was no evidence showing that Sanford intended to mislead patients. Rather, the evidence established that Sanford made a mistake and then attempted to meet with Dr. Friederichs to correct the mistake. Dr. Friederichs refused to meet and chose litigation. Even then, the parties agreed to the corrective letter within two weeks. There is no evidence that Sanford acted with the requisite deliberate intent to award attorneys' fees or additional damages under the USAPA.

Dr. Friederichs cites scant evidence in support of a knowingly committed violation. Ms. Mangin's flagging that Dr. Friederichs may not "like" how the letter was worded clearly referenced the absence of his new contact information and the department's prior discussion of departing physician letters. (Trial Ex. P005). Dr. Piatt and Mr. Erickson credibly testified that they thought someone else was showing the letter to Dr. Friederichs. Reviewing departing physician letters was

not something Dr. Piatt had done before, and he deferred to the marketing team and Mr. Erickson when he said "[i]f that is the standard letter that looks fine to me." (Trial Ex. P036). Mr. Erickson immediately acknowledged that he had made a mistake when he learned the letter went out without Dr. Friederichs seeing it. (Trial Ex. P102A) ("I F'd up").

Dr. Friederichs mischaracterizes the evidence and testimony in arguing that Dr. Piatt lied to Dr. Friederichs and Mr. Erickson never owned up to the mistake. Dr. Piatt apologized to Dr. Friederichs as was heard in the recording Dr. Friederichs made after this lawsuit had already commenced. (Trial Ex. P131). And the only thing Dr. Piatt "disavowed" in the recording was involvement with the ongoing lawsuit. *Id.*[3] Mr. Erickson attempted to meet with Dr. Friederichs to correct the mistake, but Dr. Friederichs refused and filed this lawsuit. On the stand, Mr. Erickson was apologetic and said he felt awful that Dr. Friederichs was not shown the letter prior to it being sent. And, again, he immediately recognized that he had screwed up when he found out that Dr. Friederichs had not seen the Jan. 5 letter.

Dr. Friederichs told Dr. Piatt that "it isn't that easy" anymore and would not meet with Sanford. After the lawsuit was started, the attorneys discussed and agreed upon the language of the Feb. 4 letter and the going forward communication plan. This happened within approximately two weeks after Dr. Friederichs filed this lawsuit. Any perceived delay was the result of Dr. Friederichs's refusal to meet, initiation of litigation, and unreasonable deadline. Dr. Friederichs never credibly wanted to resolve anything with Sanford, he wanted a lawsuit. (Ex. B, Dr. Friederichs's Text) ("I think I kinda have them by the balls tho").

Finally, even if the Court finds that Dr. Friederichs proved a knowingly committed violation of the USAPA, the Court should not treble his damages. Dr. Friederichs never showed any damage and the jury, nonetheless, awarded him $24,250.00 for his USAPA claim. The trebling of damages is

---

[3] It is ironic that a litigant, while represented by counsel, would secretly tape record one of his longtime professional colleagues who was also represented by counsel, and then claim that the colleague lied in this staged and secretly recorded conversation.

optional and meant to provide the Court with the ability to remedy any damage not accounted for in the jury's award. (Doc. 188, p. 6) ("The USAPA 'is remedial in nature and must be liberally construed to effectuate its purpose.' ") (quoting *Staal v. Scherping Enterprises, Inc.*, 466 F. Supp. 3d 1030, 1034 (D.N.D. 2020)). Dr. Friederichs, however, seeks to have his damages trebled to punish Sanford and deter it from future similar conduct. (Doc. 188, p. 20). This is not an appropriate reason to treble damages; Dr. Friederichs needed to show that his actual damage award was inadequate.

Dr. Friederichs has not shown that he was awarded an insufficient amount on his claims. Further, it is clear from the verdict and the jury's question that the jury already doubled the actual damage it found by awarding Dr. Friederichs the same damages twice. (Doc. 180-3; Doc. 181). The Court should not further compound the jury's error by increasing Dr. Friederichs's damage award.

## III.    The Fees Sought Are Unreasonable and Overstated and Should Be Reduced by 90%.

If the Court finds that Dr. Friederichs is entitled to attorneys' fees under either the USAPA or the Lanham Act, he is only entitled to "reasonable" fees, not his excessive fees incurred on meritless claims or in pursuit of miniscule damages.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Here, Plaintiff represents that this amount (the "lodestar amount") equals $492,734.79. (Doc. 191, p. 4). Except for as identified below, Sanford does not challenge the lodestar amount based on an unreasonable number of hours spent on tasks.[4] Rather, the factors the Court is to consider in adjusting the lodestar amount demand a significant

---

[4] While not distinctly set out in Mr. Wheeler's affidavit, the associates employed in this lawsuit by Dr. Friederichs, including a law clerk, were billed at an average hourly rate of $313.57. (Doc. 191, pp. 10-11). The paralegals were billed at an average hourly rate of $280.06 for 61.6 hours. (Doc. 191, p. 11). Dr. Friederichs provides no support for such a high hourly rate for the paralegals employed on his case. In a recent case, "Felhaber's hourly rates . . . for paralegal and litigation support ranged from $130 to $160. *ResCap Liquidating Tr. v. Primary Residential Mortgage, Inc.*, 016CV4070SRNHB, 2021 WL 1668013, at *12 (D. Minn. Apr. 28, 2021). The discrepancy between the rates is not justified by Mr. Wheeler's affidavit. Even the case Dr. Friederichs cites in support of the associate rates says that rates between $200 and $300 are appropriate. (Doc. 188, p. 177) (citing *Lynne v. Verner*, No. 3:23-CV-100, 2023 WL 11225943, at *2 (D.N.D. Dec. 29, 2023)).

reduction.

Following calculation of the lodestar amount, "other factors may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained." *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 965 (8th Cir. 2012) (internal quotation marks omitted). "The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins by Jenkins v. State of Mo.*, 127 F.3d 709, 716 (8th Cir. 1997) (citing *Hensley*, 461 U.S. at 436). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Marez*, 688 F.3d 958 at 965 (quoting *Hensley*, 461 U.S. at 434).

"There is no precise rule or formula for making fee determinations in cases with only partial success, but a district court may reduce the award to account for a party's limited success." *Deadwood Canyon Ranch, LLP v. Fid. Expl. & Prod. Co.*, 4:10-CV-081, 2014 WL 11531553, at *7 (D.N.D. June 26, 2014) (citing *Marez v. St.-Gobain Containers, Inc.*, 688 F.3d 958, 966 (8th Cir. 2012)). "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. Where "the court cannot separate out which hours were billed for which issues, [it] may simply reduce the award to account for the plaintiff's limited success[.]" *Warnock v. Archer*, 397 F.3d 1024, 1026 (8th Cir. 2005).

Dr. Friederichs had very limited success on his claims in this lawsuit. Further, except in a few discrete instances identified below, he did not separate out what hours were billed for what specific issues. Accordingly, after appropriately reducing the lodestar amount for a few discrete issues, the Court should apply an overall reduction to the attorneys' fees Dr. Friederichs may recover.

## A.    Dr. Friederichs Seeks Attorneys' Fees for Distinct Issues That He Lost or For Which Fees Are Not Available.

As briefed below, many of the billing entries are not specific enough and should be reduced on an overall percentage basis. However, there are some distinct issues that were identified in the billing records for which Dr. Friederichs cannot recover fees.

First, Dr. Friederichs seeks fees for his affirmative Motion for Partial Summary Judgment where he sought a finding of liability on his False Endorsement Lanham Act and Breach of Contract claims. (Docs. 95, 113). The Court denied Dr. Friederichs's motion, and partially granted Sanford's motion. (Doc. 123, p. 17). Dr. Friederichs seeks $52,222.00 in attorneys' fees for summary judgment briefing. (Doc. 191, pp. 6-7; Doc. 191-1, p. 43). Of that, $31,002.00[5] is attributable to Dr. Friederichs's Motion for Partial Summary Judgment, which he lost, and which included the breach of contract claim for which no fee shifting is available. Dr. Friederichs cannot recover these fees, and they should be deducted from his lodestar calculation.

Second, Dr. Friederichs sought to have Sanford's Chief Legal Officer, Jennifer Grennan, testify at trial. Sanford even offered a stipulation that would have given Dr. Friederichs the information he claimed to need from Ms. Grennan. (Doc. 161, p. 3). He nonetheless insisted on enforcing his trial subpoena and forced Sanford to move to quash the subpoena. The Court granted Sanford's motion before trial for the reasons stated on the record. Dr. Friederichs seeks fees totaling $13,073.50[6] for having to respond to the motion to quash. (Doc. 191-1, pp. 51-55). Dr. Friederichs should not be permitted to recover fees for forcing Sanford to quash his trial subpoena, especially

---

[5] The attorneys' fees for summary judgment are contained on pages 39 to 43 of Doc. 191-1. All entries prior to October 16, 2023, are necessarily attributable to Dr. Friederichs's motion because Sanford had not yet filed its motion for summary judgment. (Doc. 191-1, p. 41, Doc. 93). Following October 16, 2023, four entries are specifically attributable to Dr. Friederichs's motion: (1) 10/16/23, 6.9 hours, $2,760.00; (2) 11/16/23, 2.6 hours, $1,040.00; (3) 11/17/23, 7.0 hours, $2,800; and (4) 11/20/23, 3.7 hours, $1,480.00. All the fees specifically attributable to Dr. Friederichs's motion added together total $31,002.00 and are highlighted in blue in Ex. A to the Declaration of Shawn M. Raiter. There are also many vague entries that could be attributable to Dr. Friederichs's response to Sanford's motion or his own motion. *See, e.g.,* (Doc. 191-1, p. 42) ("Analysis regarding summary judgment briefing . . . ."). These are better addressed by a percentage reduction as discussed below.

[6] The attorneys' fees for pre-trial attorney time are contained on pages 44 to 55 of Doc. 191-1. Fourteen entries totaling $13,073.50 are attributable to Jennifer Grennan's subpoena and/or the motion to quash: (1) 8/19/24, 0.5 hours, $200.00; (2) 8/23/24, 0.9 hours, $360.00; (3) 8/23/24, 2.2 hours, $946; (4) 8/23/24, 1.0 hours, $600.00; (5) 8/24/24, 1.3 hours, $520.00; (6) 8/24/24, 2.5 hours, $1,075.00; (7) 8/24/24, 2.4 hours, $1,440.00; (8) 8/25/24, 0.8 hours, $480.00; (9) 8/25/24, 9.5 hours, $4,085.00; (10) 8/25/24, 1.9 hours, $1,111.50; (11) 8/25/24, 1.7 hours, $680.00; (12) 8/26/24, 1.3 hours, $780.00; (13) 8/26/24, 0.7, $280.00; and (14) 8/26/24, 1.2 hours, $516.00. These entries are highlighted in Green in Ex. A to the Declaration of Shawn M. Raiter.

where Sanford offered a reasonable stipulation.

Third, Dr. Friederichs seeks $14,035.50[7] in attorneys' fees for settlement discussions. (Doc. 190, p. 6). However, Dr. Friederichs never seriously entertained settlement or reasonably sought a resolution. He should not be permitted to recover substantial fees for settlement discussions that were never close to resolving the case.

Fourth, Dr. Friederichs seeks fees totaling $1,240.00[8] related to his expert, Robert Church, who never testified at trial and whose opinions were not used at summary judgment. He should not be permitted to recover these fees as Mr. Church never testified.

Before applying the reductions discussed later in this brief, the Court should exclude from the lodestar amount any attorneys' fees incurred by Dr. Friederichs for his Motion for Partial Summary Judgment, unreasonable attempt to have Jennifer Grennan testify at trial, wasted settlement discussions, and efforts related to Robert Church totaling $59,351.00. Those billing entries are highlighted in Ex. A to the declaration of Shawn M. Raiter and are summarized in this table:

| Issue Fees Are Related To | Highlight Color in Exhibit A | Amount |
|---|---|---|
| Plaintiff's Motion for Partial Summary Judgment | Blue | $31,002.00 |
| Trial Subpoena of Jennifer Grennan | Green | $13,073.50 |
| Wasted Settlement Discussion | Red | $14,035.50 |
| Robert Church | Purple | $1,240.00 |
| Total | | $59,351.00 |

**B.    Dr. Friederichs Obtained Less Than 5% of the Damages He Sought.**

In his last pre-trial disclosures, Dr. Friederichs sought $5,000,000.00 in exemplary damages,

---

[7] These entries are highlighted in red in Ex. A to the Declaration of Shawn M. Raiter.

[8] These entries are highlighted in purple in Ex. A to the Declaration of Shawn M. Raiter.

$777,168.00 in disgorgement, $400,000.00 in emotional distress, $60,420.00 for breach of contract, $28,646.00[9] in lost future profit, and *at least* $28,646.00 in reputation damages. (Ex. C, pp. 2-4; Doc. 94-2, pp. 11, 13-14; Raiter Decl.). In total, he sought $6,294,880.00 in this case. He was awarded $289,800 which is equal to only 4.6% of the amount he claimed in the lawsuit. If the non-exemplary damages are isolated, Dr. Friederichs sought $1,294,880.00 ($777,168.00 + $400,000.00 + $60,420.00 + $28,646.00 + at least $28,646.00). He was awarded only $49,800.00 actual damage which is equal to 3.8% of the amount he sought.

### C.    Dr. Friederichs Succeeded on Only 1/3 of the Claims He Pursued.

Dr. Friederichs made claims for false endorsement under the Lanham Act, unlawful advertising under the USAPA, breach of contract, defamation, tortious interference, and invasion of privacy.[10] (Doc. 1). His claims for defamation, tortious interference, and invasion of privacy were dismissed on summary judgment. (Doc. 123, p. 17). The jury found for Sanford on Dr. Friederichs's breach of contract claim and for Dr. Friederichs on his claims under the Lanham Act and the USAPA. (Doc. 181). Accordingly, subject to the renewed Rule 50 motion, Dr. Friederichs was only successful on 1/3 of the claims he asserted in this lawsuit.

### D.    Dr. Friederichs Proved Only 0.167% of the Revenue He Sought to Disgorge.

Likely because he knew he could not prove he had sustained appreciable actual damage, Dr. Friederichs spent much attorney and expert time and expense trying to prove that he was entitled to disgorge $777,168.00 of Sanford's revenue. (Ex. C, p. 3; Doc. 94-2). After vigorously pursuing this theory throughout the lawsuit, and spending countless hours of attorney, paralegal, and expert time, Dr. Friederichs obtained an award of $1,300.00 (if allowed by the Court) which is equal to only

---

[9] Mr. Schooneveld issued a Third Supplemental Expert Report consistent with this number. (Raiter Decl.) Sanford cites to Mr. Schooneveld's Second Supplemental Expert Report where he indicated damages for lost future profits were $29,514 because it is already on the Court's docket and Dr. Friederichs designated the third report as confidential.

[10] A claim for exemplary damages in North Dakota is derivative of another cause of action and is not an independent claim. *See, e.g,* N.D.C.C. § 32-03.2-11(4).

0.167% of the revenue he sought to disgorge.

        **E.**      **Time Unnecessarily Spent on Irrelevant Issues or Issues Dr. Friederichs Significantly Lost, or For Which Fees Cannot be Awarded.**

This case was simple, Sanford made a mistake in not showing the Jan. 5 letter to Dr. Friederichs and that mistake needed to be corrected. Sanford was willing and able to correct that mistake and did so within weeks through the Feb. 4 letter and its agreement to provide Dr. Friederichs's contact information to patients. *See, e.g.*, (Doc. 23; Trial Exs. P062, P131-133).

Even after the Feb. 4 letter and agreed order, Dr. Friederichs aggressively litigated every aspect of this lawsuit. That was his prerogative, but it does not mean he is entitled to recover all his attorneys' fees and expenses. *See, e.g., Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1213 (8th Cir. 1999) (internal quotation omitted) (Approving reduction of fees and remanding for further fee reduction where "Plaintiff's counsel had taken an overbroad approach to a fairly straight forward claim of sexual harassment and retaliation and not the myriad of other claims and charges that served to drive the excessive time and expense of this litigation."); *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1012 (8th Cir. 2004) (unreasonableness in resolving the dispute relevant in reducing fee request); *Jaquette v. Black Hawk Cnty., Iowa*, 710 F.2d 455, 457, 461-63 (8th Cir. 1983)(approving reduced attorneys' fees and remanding for trial court to consider sanctions against attorneys who requested lodestar figure of $73,014.75 for recovery of $1,500).

Parties cannot take an overbroad, unreasonable, and overly aggressive litigation approach and then recover the exorbitant fees they created. Dr. Friederichs spent much time pursuing his unsuccessful breach of contract claim for which a fee award was not available. He conducted a 30(b)(6) deposition of Sanford (Connie Burrington as the representative) on that topic and litigated the claim through trial. Dr. Friederichs also spent a substantial amount of time in nearly every deposition asking about OR block time and issues related to his medical staff privileges. None of that time related to the Lanham Act or USAPA claims. At trial, these issues needlessly took up time that should not be reimbursed.

16

Disgorgement was the centerpiece of Dr. Friederichs's quixotic pursuit of Sanford. He spent an enormous amount of time conducting document discovery and taking depositions of Sanford about this topic (primarily Doug Nowak as the witness). Most of his experts' work and disclosures focused on this topic. One of those experts, Robert Church, did not even testify at trial. The combination of the Court's summary judgment order, trial rulings, and jury verdict resulted in a finding of at most $1,300.00 for disgorgement. Dr. Friederichs, however, seeks attorneys' fees and expenses of several hundred times that amount for work related to disgorgement.

Counsel for Dr. Friederichs told the jury that this case was never "about the money." Regardless of Dr. Friederichs's reasons for exhaustively litigating this case, Eighth Circuit precedent does not permit a plaintiff to drive attorneys' fees through the roof and then recover 100% of them under a prevailing party provision. At best, Dr. Friederichs was justified in asserting his rights and obtaining the stipulation and order in early February 2022.[11] Any litigation and fees that followed the stipulation was Dr. Friederichs's choice and cannot be shifted to Sanford.

## IV.    The Billing Records Do Not Properly Document the Fee Request.

The billing records submitted as the basis for this fee request primarily only generally refer to issues. For example, the terms "claims," "damages," or "issues" are regularly used. (Doc. 191-1). However, Dr. Friederichs asserted a variety of claims and damage theories with varying degrees of success. Four of the six claims he asserted do not allow fee awards. Billing entries that only refer to "claims," "damages," or "issues" are not sufficiently precise. Additionally, large chunks of the billing records (including but not limited to the sections for fact discovery, fact depositions, and expert discovery) do not specify to what claim or issue they are related. (Doc. 191-1). This type of billing does not preclude wholesale recovery, but it subjects the lodestar amount to an overall reduction. *See Hensley*, 461 U.S. at 440; *Warnock*, 397 F.3d at 1026; *see also H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260

---

[11] Sanford does not, however, concede that Dr. Friederichs was reasonable up until the stipulation. Had Dr. Friederichs met with Sanford he could have obtained the same result without resorting to litigation.

(8th Cir. 1991). Any uncertainties in the billing records must be resolved against Dr. Friederichs. *H.J. Inc.*, 925 F.2d at 261.

A case cited by Dr. Friederichs compiles Eighth Circuit cases where overall reductions were applied to a partially successful plaintiff's vague billing records:

> In *Warnock*, the Eighth Circuit explained that when a court cannot separate out which hours were billable for which issues, it may simply reduce the total award to account for a party's limited success. 397 F.3d at 1026. In *Marez*, the Eighth Circuit addressed the issue of reasonable attorney's fees in a case where a party was seeking to recover fees for unsuccessful claims. 688 F.3d at 966. Several of the plaintiff's claims were dismissed prior to trial, and the jury found in favor of the plaintiff on only one claim. The court in *Marez* affirmed the district court's fifty percent (50%) reduction in plaintiff's claimed attorney's fees for the limited success on the plaintiff's claims. Likewise, in *Warnock*, the Eighth Circuit reduced the plaintiff's requested attorney's fees by fifty percent (50%) for the failure to prevail on all issues in the case. 397 F.3d at 1027. More recently, the Eighth Circuit reduced a prevailing party's requested attorney's fees by seventy-five percent (75%) based upon the limited success the plaintiff achieved on the merits. *Kirby v. Roth*, 515 Fed. Appx. 642, 644 (8th Cir. 2013).

*Deadwood Canyon Ranch, LLP*, 2014 WL 11531553, at *7.

Dr. Friederichs only succeeded on one third of the legal claims he asserted. Only two of the claims he asserted even potentially allowed a fee award. Dr. Friederichs cannot recover for time spent in discovery, motion practice, or trial on his tort or contract claims. In addition, Dr. Friederichs:

- Overly aggressively litigated a case with no damages;
- Quickly sought litigation rather than trying to resolve the dispute;
- Obtained only 3.85% of the non-punitive damages he claimed;
- Obtained only 4.6% of the total damages he claimed;
- Proved only 0.167% of the disgorgement amount he claimed; and
- Seeks over market rates for associate attorney and paralegal fees.

While there is no precise formula for the Court to follow, considering Dr. Friederichs's unsuccessful claims and extremely limited success in proving damage, Sanford believes that the Court should award at most 10% of the lodestar amount following the reductions discussed above. The numbers above justify this significant reduction. In fact, a reduction to 5% would be justified considering Dr.

18

Friederichs proved only a small fraction of the monetary award he sought.

Sanford anticipates that Dr. Friederichs will point to specific items in his bills that reference a claim or issue he was successful on and say that those bills should not be subject to an overall percentage reduction. However, Sanford only carved out very specific and large issues that: (1) were clearly and separately billed such that they could be identified and sequestered from other entries; and (2) Dr. Friederichs was not successful on. There is an abundance of other entries that implicate issues on which Dr. Friederichs had no or limited success that were excluded as being better addressed via an overall reduction.

For example, billing related to disgorgement far exceeded the disgorgement amount he proved ($1,300.00). However, the billing records only sometimes specify disgorgement. Often, they refer to damages, patient data, Mr. Schooneveld, or other items that implicate disgorgement. Rather than attempting to extract every hour for disgorgement and apply a reasonable reduction for Dr. Friederichs's limited success, an overall percentage reduction factoring in his overall success makes more sense.

Following the reductions set forth above, the lodestar amount is $428,452.09. Ten percent of $428,452.09 is $42,845.21. Dr. Friederichs's actual damages of $49,800 are nearly equal to this reduced amount, further exemplifying its reasonableness. If awarded at all, the Court should reduce Dr. Friederichs's attorneys' fees recovery to $42,845.21.

## Conclusion

The Court should rule that Dr. Friederichs is not entitled to recover attorneys' fees or treble damages. To the extent attorneys' fees are awarded, they should be no higher than $42,845.21.

Date: <u>November 4, 2024</u>                    **LARSON • KING, LLP**

<u>/s/ *Shawn M. Raiter*</u>
Shawn M. Raiter (ND 05712)
Angela Beranek Brandt (ND 08130)
Zane P. Aubert
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN  55101
Tel: (651) 312-6500
Fax: (651) 312-6618
sraiter@larsonking.com
abrandt@larsonking.com
zaubert@larsonking.com

**Attorneys for Sanford Health**