## UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA

---

Matthew Friederichs, M.D.,                                   Case No. 3:22-cv-0008-PDW-ARS

                    Plaintiff,

vs.

Sanford Health,

                    Defendant.

---

### Sanford Health's Memorandum in Opposition to
### Plaintiff's Motion for Costs

---

### Introduction

In addition to seeking a half-million-dollar fee award—far more than the damages the jury awarded—Dr. Friederichs also moves the Court for $139,606.05 in costs, more than 75% of which are plainly disallowed under well-established federal law because they are not explicitly provided for under 28 U.S.C. § 1821, 28 U.S.C. § 1920, the Lanham Act (15 U.S.C. § 1117), or N.D.C.C. § 51-15-09. Because Dr. Friederichs did not produce evidence sufficient to support a verdict on his Lanham Act or North Dakota Unlawful Sales or Advertising Practices Act ("USAPA") claims, the Court should grant Sanford's renewed motion for judgment as a matter of law (*see* Dkt. 197) and deny this motion for costs as moot.

If the Court does not grant Sanford's renewed motion, it should nevertheless exercise its substantial discretion to deny any award of costs to Dr. Friederichs. But if the Court in its discretion determines that Dr. Friederichs should be awarded any costs, then it may only award Dr. Friederichs those costs which are authorized under federal law.

**Argument**

## I.     The Legal Standard for Awarding Costs to a Prevailing Party.

"District courts may award costs to a prevailing party." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) (citing Fed. R. Civ. P. 54(d)). "[28 U.S.C. § 1920] enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d). It is phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party." *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). Under section 1920, federal courts may tax:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. The witness fee specified in section 1920(3) is defined in 28 U.S.C. § 1821:

(a) (1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.

…

(b) A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

28 U.S.C. § 1821. "Sections 1821 and 1920 create a default rule and establish a clear baseline against which Congress may legislate. Consistent with that default rule, some federal statutes simply refer to

'costs.' In those cases, federal courts are limited to awarding the costs specified in §§ 1821 and 1920." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 339 (2019). Unless a federal statute provides "express authority, courts may not award litigation expenses that are not specified in §§ 1821 and 1920." *Id.* "The award of costs in federal court is governed by Rule 54(d), rather than by state law that conflicts with Rule 54." *Humann v. KEM Elec. Co-op., Inc.*, 497 F.3d 810, 813 (8th Cir. 2007).

## II.      The Court Should Exercise its Substantial Discretion to Award No Costs.

Though there is a general presumption in favor of awarding costs to a prevailing party, federal district courts nevertheless retain "substantial discretion" whether to grant such an award. *Miller v. Cartel*, 627 F. Supp. 3d 1043, 1049 (D.N.D. 2022); *see also Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 762 (8th Cir. 2006) ("the district court has substantial discretion … to refuse to tax costs in favor of the prevailing party"). Relevant considerations as to whether Dr. Friederichs should be awarded costs include:

> 1) where taxable expenditures are unnecessary or are unreasonably large; 2) where the prevailing party should be penalized for unnecessarily prolonging the trial or for injecting unmeritorious issues; 3) where the prevailing party's recovery is so insignificant that the judgment amounts to a victory for the non-prevailing party; and 4) where the case is "close and difficult."

*Chester v. Nw. Iowa Youth Emergency Ctr.*, 158 F.R.D. 626, 631 (N.D. Iowa 1994) (quoting *Myrick v. TNT Overland Express*, 143 F.R.D. 126, 128 (N.D. Ohio 1992) (internal quotation omitted)). As detailed in Sanford's memorandum in support of its renewed motion for judgment as a matter of law (Dkt. 198) and its memorandum in opposition to Dr. Friederichs's motion for attorneys' fees (Dkt. 200), Dr. Friederichs aggressively over-litigated this case for years, with extremely limited "success," and should not be rewarded for doing so. And, as argued below, because more than 75% of the costs Dr. Friederichs seeks are costs he concedes are not taxable under federal law, the Court should exercise its substantial discretion to award Dr. Friederichs no costs even if it does not grant Sanford's renewed motion.

III.    **If The Court Awards Any Costs, It Should Award Only the Costs Actually Allowed Under Sections 1821 and 1920.**

The bulk of the costs Dr. Friederichs seeks to tax are not allowed under federal law. Only the costs explicitly enumerated in sections 1821 and 1920, as outlined above, are taxable. Dr. Friederichs's memorandum and bill of costs should be "given careful scrutiny," *see Koppinger v. Cullin–Schiltz and Assocs.*, 513 F.2d 901, 911 (8th Cir. 1975), and the Court should award only those costs it is authorized to award—if it awards any costs at all.

A.  **Filing Fees Under Section 1920.**

Dr. Friederichs seeks an award of $402.00 for the filing fee paid to initiate this lawsuit. (Dkt. 193 at 3). Filing fees are taxable as "fees of the clerk" under section 1920. 28 U.S.C. § 1920(1). If the Court awards Dr. Friederichs any costs, Sanford does not contest his recovery of this filing fee.

B.  **Deposition Fees Under Section 1920.**

Dr. Friederichs seeks an award of $24,921.55 for transcripts and video recordings of depositions taken in this case. The taxation of deposition transcript costs is governed by 28 U.S.C. § 1920(2). District courts have substantial discretion in assessing deposition costs under section 1920. *Bathke v. Casey's General Stores, Inc.*, 64 F.3d 340, 347 (8th Cir. 1995). Courts may tax transcription costs as long as the deposition was "necessarily obtained for use in a case" and was not "purely investigative." *Marmo*, 457 F.3d at 762. Taxation of costs for both printed and electronically recorded transcripts of the same deposition is only permitted if each transcript is necessarily obtained for use in a case. *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 467 (8th Cir. 2015).

The "necessarily obtained for use in the case" standard "does not allow the prevailing party to recover costs for materials that merely added to the convenience of counsel or the district court, or for materials produced solely for discovery." *Hometown Living, LLC v. R.H. Rogers & Assocs.*, P.C., No. 3:17-CV-00249, 2023 WL 4290166, at *2 (D.N.D. May 12, 2023). Transcripts are necessarily obtained for use in the case if the transcribed testimony was used in motions or needed for

impeachment at trial, if the deponent was on the other party's trial witness list, or if the deposition was necessary to the issues when it was taken (even if the deposition was minimal or not critical to the prevailing party's success). *Id.*

Dr. Friederichs's deposition transcript costs appear to meet this standard except for the four that were not used in motions or at trial. (*See* Dkt. 193 at 3-5). Under *Marmo*, the Court should exercise its discretion to deny an award of costs for deposition transcripts of Doug Nowak (individually and as corporate designee) and Darren Huber (individually and as corporate designee). *Marmo*, 457 F.3d at 762-763. The Court should deduct $2,001.25 for the transcripts and video of Mr. Nowak (Dkt. 195-3 & 195-9) and $2,320.75 for the transcripts and video of Mr. Huber (Dkt. 195-5). If the Court awards deposition transcript costs, it should only award $20,599.55.

### C.  Witness Fees Under Section 1821.

Under 28 U.S.C. § 1821(b), a witness is to be paid $40 for "each day's attendance" and for "the time necessarily occupied in going to and returning from the place of attendance." "Attendance" includes appearing at a deposition, 28 U.S.C. § 1821(a)(1). Dr. Friederichs requests $760.00 in taxable costs for fees he paid to witnesses related to their attendance at depositions and trial. If the Court determines that any costs should be awarded to Dr. Friederichs, Sanford does not oppose these costs because they appear to be allowed under section 1821.

### IV.  The Court Cannot Award Expert Witness Fees Under the USAPA (N.D.C.C. § 51-15-09) and Should Deny Dr. Friederichs's Request for More Than $100,000 in Expert Fees.

Before addressing Dr. Friederichs's argument for an award of $104,754.50 in expert witness fees under the USAPA, Sanford notes that Dr. Friederichs appears to understand the well-established legal principle, explained above, that "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." *Crawford*, 482 U.S. at 439. Dr. Friederichs's

understanding is evidenced by the fact that he makes no mention of his Lanham Act claim in his request for expert witness fees. Under the Lanham Act, a district court may award "the costs of the action" to a prevailing plaintiff. 15 U.S.C. § 1117(a). But because it does not explicitly refer to expert witness fees, the Lanham Act does not provide the "express authority" required to award litigation expenses beyond the six categories of "costs" specified by Congress. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 292 (2006) ("no statute will be construed as authorizing the taxation of witness fees as costs unless the statute refers explicitly to witness fees" (cleaned up)). Presumably for this reason, Dr. Friederichs does not seek expert witness costs under the Lanham Act.

Dr. Friederichs's attempt to recoup his exorbitant expert witness fees via the USAPA fares no better. The USAPA provides,

> If the court finds the defendant knowingly committed [a violation of the USAPA], the court . . . must order that the person commencing the action recover costs, disbursements, and actual reasonable attorney's fees incurred in the action.

N.D.C.C. § 51-15-09.[1] Put simply: the USAPA does not "refer[] explicitly to witness fees" and so, like the Lanham Act, does not provide the "express authority" required for the Court to award such fees. For this straightforward reason, Dr. Friederichs cannot recover any of his $104,754.50 in expert witness fees which exceed the statutory limits of section 1821(b).

To resist this conclusion, Dr. Friederichs cites *Deadwood Canyon Ranch, LLP v. Fid. Expl. & Prod. Co.*, for the proposition that when a request for an award of expert witness fees is "clearly based upon a specific state statute which provides for the recovery of costs and attorney's fees to the prevailing party at trial . . . the limitations for recoverable expert witness fees and costs under federal

---

[1] If the Court denies Sanford's renewed motion for judgment as a matter of law and, subsequently, finds that Dr. Friederichs has met his burden of showing that Sanford "knowingly"—not negligently or recklessly—committed a violation of the USAPA, it "must order" that Dr. Friederichs recover his costs related to his cause of action under the USAPA. N.D.C.C. § 51-15-09. For the reasons in Sanford's memorandum in opposition to Dr. Friederichs's motion for attorneys' fees, (*see* Dkt. 200), he cannot establish that "knowingly" requirement and for those same reasons he should not be awarded any costs—even those authorized by sections 1821 and 1920—under the USAPA.

law do not apply." No. 4:10-CV-081, 2014 WL 11531553, at *8 (D.N.D. June 26, 2014). (*See* Dkt. 193 at 7-8). Seizing on this single unsupported statement in *Deadwood*, Dr. Friederichs asserts that he is entitled to recover his expert witness fees in excess of the limits of section 1920 because the USAPA provides for an award of costs and, in turn, N.D.C.C. § 28-26-06(5) provides that taxable costs include such expert witness fees. (Dkt. 193 at 8).

But *Deadwood*'s assertion that section 1920 does not apply when a party seeks to recover costs under a state statute is not as straightforward as Dr. Friederichs represents. Federal courts follow federal procedural law, which preempts state procedural law when, as here, the state law addresses the same issue. (*See* Dkt. 47 (arguing that when "there is a conflict between federal procedural law and [a] state procedural requirement," federal procedure "prevails"); Dkt. 57 (quoting *Weather Modification LLC v. Brackin*, 340 F.R.D. 316, 318-23 (D.N.D. 2021) in ruling that federal procedural law governs exemplary damages pleading requirements in federal court)); *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010); *see also Eastep v. KRH, Inc.*, No. 1:19-CV-004, 2019 WL 5684500, at *2-4 (D.N.D. Nov. 1, 2019) (analyzing related statute N.D.C.C. § 28-26-01(2) and determining that federal courts have no authority to award fees and costs under state procedural laws).

Dr. Friederichs sued under the USAPA. That state statute governs his substantive rights, and the Court must adjudicate those rights under it. *See Shady Grove*, 559 U.S. at 407. But the USAPA provides only that Dr. Friederichs may be entitled to "costs." N.D.C.C. § 51-15-09. It does not explicitly provide for expert witness fees. *See Arlington*, 548 U.S. at 292 ("no statute will be construed as authorizing the taxation of witness fees as costs unless the statute refers explicitly to witness fees" (cleaned up)). Dr. Friederichs nevertheless argues that his expert witness fees are allowable "costs" under N.D.C.C. § 28-26-06(5). But that statute is procedural law. And because it answers the same question that sections 1821 and 1920 already address—allowable taxable costs—it is preempted by

federal procedural law limiting "costs" to the categories enumerated in sections 1821 and 1920.

This legal principle, acknowledged in Dr. Friederichs's own briefing on exemplary damages (*see* Dkt. 47), has been recognized in North Dakota federal courts for decades. *See Murphy v. Amoco Prod. Co.*, 558 F. Supp. 591, 594 (D.N.D. 1983) ("[T]he United States Supreme Court, in construing the predecessor to 28 U.S.C. § 1821, held that Congress had dealt comprehensively with the subject of compensation for witness fees and had made no exception for the fees of expert witnesses. The Supreme Court further stated that such 'legislation must be deemed controlling and excludes the application in the federal court of any different state practice.' " (citing *Henkel v. Chicago, St. Paul, Minn. & Omaha Ry.*, 284 U.S. 444, 446-47 (1932)), *aff'd*, 729 F.2d 552 (8th Cir. 1984).[2]

Sanford expects that Dr. Friederichs will point the Court to cases in federal courts where prevailing parties were awarded expert witness fees in lawsuits involving state law claims. To the extent that those courts awarded expert witness fees because the substantive laws at issue explicitly provided for them, this case is easily distinguishable for the reasons above. Similarly, Sanford expects Dr. Friederichs to point to cases such as *Deadwood* in which federal courts have awarded

---

[2] In another attempt to recoup his six-digit expert witness fees, (Dkt 193 at 13, fn 4), Dr. Friederichs again cites *Deadwood* for the proposition that the Court should award these fees as "attorneys' fees" because, according to *Deadwood*, "Reimbursement of expert witness fees are routinely approved by courts in the Eighth Circuit and around the country as a component of attorney's fees rather than costs." 2014 WL 11531553, at *8 (citing *Lee-Thomas, Inc. v. Hallmark Cards, Inc.*, 275 F.3d 702 (8th Cir. 2002). But *Lee-Thomas* did not address whether expert witness fees could properly be awarded as attorneys' fees—it did not address the propriety of awarding expert witness fees at all, because the appellant's challenge (to the calculation of the fees, not their recovery in general) was raised for the first time on appeal. 275 F.3d at 708. Dr. Friederichs's attempt to use *Deadwood's* unsupported declaration about 8th Circuit law regarding "routine" awards of expert witness fees is as misleading as his argument under *Deadwood* and the USAPA, and cannot be a basis for awarding such fees. *See Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 93 F.4th 408, 423 (8th Cir. 2024) ("expert witness fees are generally not part of attorney's fees"); *see also West Virginia Univ. Hosps. v. Casey*, 499 U.S. 83, 86 (1991) (holding that a party cannot recover expert witness fees as part of its attorney's fees unless there is explicit statutory or contractual language providing for this recovery) *abrogated in part on other grounds by* Pub. L. No. 102–166, Title 1, § 113(b), 105 Stat. 1075, 1079 (1991).

expert witness fees in excess of section 1821. On this issue, *Deadwood* was wrongly decided. *See Murphy*, 558 F. Supp. at 593-94 (explaining that federal courts cannot award costs under N.D.C.C. § 38-11.1-09—the same statute as *Deadwood*—in excess of the limits of section 1821). For the reasons above, the same is true of any other case Dr. Friederichs might seize upon for his proposition.

The Court should not follow Dr. Friederichs's mistaken logic. Instead, it should rule—as numerous other North Dakota district courts and the 8th Circuit have done in cases involving state law claims—that expert witness fees that exceed the limits of section 1821 are not allowed under federal law. *See, e.g., Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 93 F.4th 408 (8th Cir. 2024) (vacating an award of $1,117,791.24 in expert witness fees exceeding section 1821's limits); *Hometown Living, LLC v. R.H. Rogers & Assocs.*, P.C., No. 3:17-CV-00249, 2023 WL 4290166, at \*3-4 (D.N.D. May 12, 2023) (denying a motion for $76,109.45 in expert witness fees exceeding section 1821's limits); *Gonzalez v. Shahin*, No. 1:17-CV-157, 2022 WL 20527025, at \*2-3 (D.N.D. Apr. 27, 2022) (reducing experts fees in accordance with section 1821 from $36,589.19 to $1,341.10), *aff'd*, 77 F.4th 1183 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 2681 (2024); *Arena Holdings Charitable, LLC v. Harman Pro., Inc.*, No. 1:12-CV-031, 2014 WL 12836627, at \*2-3 (D.N.D. July 8, 2014) (reducing experts fees in accordance with section 1821 from $7,607.06 to $273.73); *Brookins v. Wissota Promoters Assoc., Inc.*, No. A3-00-06, 2001 WL 629258, at \*1-4 (D.N.D. Feb. 15, 2001) (reducing experts fees in accordance with section 1821 from $9,314.60 to $3,553.25).

For all the reasons above, the Court should deny Dr. Friederichs's motion for $104,754.50 in expert witness fees, all of which he concedes exceed the limits of sections 1821 and 1920. But even if the Court finds that expert witness fees exceeding these limits could be awarded in this case, it should nevertheless exercise its substantial discretion to tax, at most, 10% of the expert fees requested. As detailed in Sanford's memorandum in opposition to Dr. Friederichs's motion for attorneys' fees (Dkt. 200), Dr. Friederichs's experts spent an inordinate amount of time and expense

trying to prove that he was entitled to disgorge $777,168.00 of Sanford's revenue. He spent much time conducting document discovery and taking depositions of Sanford about this topic. Most of his experts' work and disclosures focused on disgorgement.[3] One of those experts, Robert Church, did not even testify at trial.

After vigorously pursuing this theory throughout the lawsuit and spending $104,754.50 on experts in that pursuit, Dr. Friederichs obtained only $1,300.00 (if allowed by the Court), which is equal to only 0.167% of the revenue he sought to disgorge. All the *Chester* factors noted in Section II above, weigh in favor of the Court exercising its discretion to award no more than 10% of the expert fees Dr. Friederichs has requested in excess of the limits of sections 1821 and 1920.

## V.        The Court Cannot Award Private Process Server Fees Under N.D.C.C. § 51-15-09.

As Dr. Friederichs acknowledges, (Dkt. 193 at 13), private process server fees also are not recoverable under section 1920. For the same reasons that Dr. Friederichs cannot sidestep section 1920 to recover expert witness fees exceeding those allowable by federal law, he also cannot recover his private process server fees. *See Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985) ("Nor can KFC recover $250 for use of a special process server, because [section 1920] contains no provision for such expenses.") (citing *Zdunek v. Washington Metropolitan Area Transit Authority*, 100 F.R.D. 689, 692 (D.D.C. 1983)). The Court should not award Dr. Friederichs any of the $1,725.00 he seeks to recover for private process server costs.

## VI.       Expert Witness Fees Under Rule 26(b)(4)(E).

Rule 26(b)(4)A) states that a "party may depose any person who has been identified as an expert whose opinions may be presented at trial," and Rule 26(b)(4)(E)(i) instructs that "the court must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in

---

[3] The billing provided by Chris Van Schoonveld does not identify what work he did on disgorgement versus work he did on future damage. Such vague billing entries further supports the denial of Dr. Friederichs's motion.

responding to discovery." *Stanley*, 784 F.3d at 464 (quoting Fed. R. Civ. P. 26). *Stanley* held, "Read together, these rules allow for the recovery of witness fees related to [an expert's] deposition." *Id.* Although section 1821 limits a witness' deposition attendance fee to $40 per day, "the flexible authorization for a 'reasonable fee' contained in Rule 26 supersedes the fee schedule outlined in § 1821(b)." *Id.*

Most of the $7,043.00 in fees Dr. Friederichs seeks under Rule 26 appear reasonable. But Rule 26(b)(4)(A) pertains to identified experts "whose opinions may be presented at trial." And of the fees Dr. Friederichs seeks under this rule, $1,130.00 are attributed to Kevin Besikof, who "performed an oversight, supervisory, and review role." (Dkt. 193 at 9). Mr. Besikof did not testify or provide a report in this case. If the Court awards any costs to Dr. Friederichs, under Rule 26 it should award only those costs that compensate the experts, not others who work with them. The Court should thus award only $5,913.00.

## Conclusion

If the Court denies Sanford's renewed motion for judgment as a matter of law, it should exercise its discretion to award Dr. Friederichs no costs. But if the Court does award Dr. Friederichs any costs, it should rule that he is entitled to recover only $27,674.55 because those are the only costs actually allowed under federal law.

Date: <u>November 4, 2024</u>

**LARSON • KING, LLP**

<u>/s/ Shawn M. Raiter</u>
Shawn M. Raiter (ND 05712)
Angela Beranek Brandt (ND 08130)
Zane P. Aubert
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN  55101
Tel: (651) 312-6500
Fax: (651) 312-6618
sraiter@larsonking.com
abrandt@larsonking.com
zaubert@larsonking.com

**Attorneys for Sanford Health**